**CONTEMPO METAL FURNITURE CO. OF CALIFORNIA, a Calif. corp., Plaintiff-Appellee,**

v.

**EAST TEXAS MOTOR FREIGHT LINES, INC., dba ETMF Freight System, Defendant-Appellant.**

**No. 79–3425.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1981.

Decided Nov. 16, 1981.

Kelly J. Mullins, Knapp, Gorssman & Marsh, Los Angeles, Cal., for defendant-appellant.

Jeffrey C. Freedman, Goldstein, Freedman & Klepetar, Los Angeles, Cal., for plaintiff-appellee.

* The Honorable Shiro Kashiwa, Associate Judge, United States Court of Claims, sitting by designation.

Before CHOY, Circuit Judge, KASHIWA,* Court of Claims Judge, and NORRIS, Circuit Judge.

KASHIWA, Court of Claims Judge.

This is an action under the Interstate Commerce Act for damages arising out of ETMF Freight System's delivery of steel tubing to Contempo Metal Furniture Company in a rusted and pitted condition. ETMF appeals the district court's judgment for Contempo, arguing that: (1) the court erred in awarding Contempo damages for freight charges paid to ETMF and labor expended in attempting to use the tubing in manufacture; and (2) the court abused its discretion in denying ETMF's motion for a new trial based on newly discovered evidence that Contempo had failed to make some of the tubing available to ETMF for salvage and had destroyed the salvage value of the remaining tubing. We affirm.

I

Facts

ETMF delivered to Contempo in California some steel tubing that Contempo had bought from a firm in Illinois. En route, the tubing was damaged by rain, and it arrived in a rusted and pitted condition. Contempo rejected the merchandise. Thereafter, ETMF subjected the steel tubing to a "pickling" process that removed the visual manifestations of the damage.

ETMF redelivered the tubing, and Contempo accepted it without inspection or exception. When Contempo chromed the tubing in order to make chairs with it, the pitting reappeared. The trial court found that Contempo could not have discovered that the steel tubing was still pitted until the tubing was chromed.

Contempo sued ETMF under the Interstate Commerce Act, and the district court awarded Contempo $7,576.46 in damages. That amount included the cost Contempo had paid its supplier for the tubing

($4,873.18), the freight charges Contempo had paid ETMF for delivering the tubing ($903.28), and the cost of the labor Contempo expended in attempting to make chairs with the tubing ($1,800.00). The district court gave ETMF no salvage credit, finding that Contempo had been unable to salvage what remained of the tubing and had made this residue available to ETMF.

The court orally announced its intended decision at the end of trial. About five weeks later, but before entry of judgment, ETMF moved for a new trial on the basis of newly discovered evidence and misconduct by Contempo.[1] The motion was supported by affidavits alleging that after trial, Contempo had failed to return some of the tubing to ETMF and had cut the remaining tubing, which was then in the form of metal chair backs, into small pieces. ETMF contended that this substantially destroyed the salvage value of the merchandise. Contempo filed counteraffidavits denying these allegations. The district court denied the motion for a new trial and entered judgment consistent with its intended decision. ETMF timely appealed.

## II

### Freight Charges

■ The Carmack Amendment to the Interstate Commerce Act makes a carrier covered by the Act liable for damages it causes to property it transports in the amount of the "actual loss or injury to the property." 49 U.S.C. § 11707(a)(1). The general rule for determining the amount of damages is the difference between the market value of the property in the condition in which it should have arrived at its destination and its market value in the condition in which it did arrive. *Gulf; Colorado & Santa Fe Railway v. Texas Packing Co.*, 244 U.S. 31, 37, 37 S.Ct. 487, 489, 61 L.Ed. 970 (1917); *F.J. McCarty Co. v. Southern Pacific Co.*, 428 F.2d 690, 692 (9th Cir. 1970). The circuits

are not in agreement, however, on whether "actual loss" includes prepaid freight charges as well as market value. *Compare W.A. Stackpole Motor Transportation, Inc. v. Malden Spinning & Dyeing Co.*, 263 F.2d 47 (1st Cir. 1958) (freight charges not recoverable), *with Marquette Cement Manufacturing Co. v. Louisville & Nashville Railroad*, 406 F.2d 731 (6th Cir. 1969) (recoverable). *Cf. Pennsylvania Railroad v. Olivit Brothers*, 243 U.S. 574, 586, 37 S.Ct. 468, 472, 61 L.Ed. 908 (1917) (freight recoverable under terms of bills of lading providing for computation of damages on basis of value of goods at place and time of shipment).

■ ETMF argues that the freight charge that Contempo paid for transporting the tubing was not an "actual loss" because Contempo received ETMF's freight services when Contempo accepted the reconditioned tubing. In *W.A. Stackpole*, the First Circuit held that acceptance of delivery of damaged goods constitutes acceptance of the carrier's service and waives any right to recover freight from the carrier. 263 F.2d at 52. Unlike the hidden damage in this case, however, the damage to the goods in *W.A. Stackpole* was apparent at the time of delivery. In *Marquette*, the defective condition was not detectable on sight, and the Sixth Circuit allowed recovery of freight even though the plaintiff had accepted the goods. 406 F.2d at 732.

The district court found that Contempo could not have detected the damage until it chromed the tubing. Additionally, Contempo received no benefit from the delivery of the tubing because it could not use the tubing, even as salvage. In these circumstances, we do not view Contempo's acceptance of delivery as an acceptance of ETMF's services. Accordingly, we hold that the freight charges Contempo paid for ETMF's useless services are recoverable as part of the "actual loss" caused by ETMF's damage to the tubing.

---

1. The motion for new trial was timely under Fed.R.Civ.P. 59, even though filed before entry of judgment. *See Director of Revenue v. United States*, 392 F.2d 307, 310 (10th Cir. 1968); *McCulloch Motors Corp. v. Oregon Saw Chain*

*Corp.*, 245 F.Supp. 851 (S.D.Cal.1963); *Ishikawa v. Acheson*, 90 F.Supp. 713 (D.Hawaii 1950); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2812, at 82 & n.44 (1973).

## III

### Labor Costs

The district court awarded Contempo the labor costs incurred in cutting, bending, and chroming the steel tubing before it discovered that the tubing was defective. ETMF argues that those labor costs are special damages not recoverable under the Carmack Amendment.

The Carmack Amendment has not altered the common law rule that special, or consequential, damages are not usually recoverable in an action for breach of contract. *See Reed v. Aaacon Auto Transport, Inc.*, 637 F.2d 1302, 1305–06 (10th Cir. 1981); *F.J. McCarty Co. v. Southern Pacific Co.*, 428 F.2d at 693. Special damages are those that the carrier did not have reason to foresee as ordinary, natural consequences of a breach when the contract was made. *See Reed v. Aaacon Auto Transport, Inc.*, 637 F.2d at 1305; *Hector Martinez & Co. v. Southern Pacific Transportation Co.*, 606 F.2d 106, 108–11 (5th Cir. 1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980). To recover special damages, the plaintiff must show that the carrier had notice of the special circumstances from which such damages would flow. *See Illinois Central Gulf Railroad v. Southern Rock, Inc.*, 644 F.2d 1138, 1141 (5th Cir. 1981); *Reed v. Aaacon Auto Transport, Inc.*, 637 F.2d at 1306.

ETMF is correct that Contempo's labor costs are special damages because they were not reasonably foreseeable to ETMF when it undertook to transport the goods. After Contempo rejected the tubing upon ETMF's first attempt to deliver it, however, ETMF had implied notice that Contempo could not use pitted tubing in its manufacturing process. The testimony of ETMF's account executive Robert Payne shows that ETMF also knew that the subsurface as well as surface pitting had to be removed in order for the tubing to be usable. Therefore, when ETMF pickled the tubing so that its pitted condition would not show, it knew or should have known that Contempo would incur labor costs in attempting to make the tubing into chairs before it discovered that the tubing was still pitted. The district court could have reasonably concluded, therefore, that the labor costs were recoverable because ETMF had implied notice of them.

The case on which ETMF primarily relies, *Marquette Cement Manufacturing Co. v. Louisville & Nashville Railroad*, 281 F.Supp. 944 (E.D.Tenn.1967), *aff'd*, 406 F.2d 731 (6th Cir. 1969), is not to the contrary. In *Marquette*, the carrier delivered the wrong kind of cement to a ready-mix concrete company. The company used the cement in customers' floors, which eventually had to be taken up and replaced. The court did not allow recovery of the cost of testing the cement to discover that it was the wrong kind or the cost of replacing the customers' floors. Although in *Marquette*, as here, the defect in the cement was one that could not be detected on sight, there was no evidence that the carrier knew what consequences delivering the wrong kind of cement would have. *See* 281 F.Supp. at 951. Thus, *Marquette* is distinguishable because the carrier there did not have notice of the special damages.

ETMF points out, however, that under the general rule, notice of the special damages must be given at or before the contract is made. *See F.J. McCarty v. Southern Pacific Co.*, 428 F.2d at 693. The purpose of this rule is to enable the carrier to protect itself from special damages by negotiating special contractual terms, declining the shipment, or taking special precautions to avoid the loss. *See Globe Refining Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 543–44, 23 S.Ct. 754, 755–56, 47 L.Ed. 1171 (1903); *Gardner v. Mid-Continent Grain Co.*, 168 F.2d 819, 822 (8th Cir. 1948). Because the carrier is taking a risk that events appreciably beyond its control may prevent it from performing the contract, the carrier is entitled to notice of any unforeseeable consequences of nonperformance so that the carrier can protect itself. *Globe Refining Co.*, 190 U.S. at 543, 23 S.Ct. at 755. Notice after the contract is made does not afford opportunity for this self-protection.

Some courts have recognized an exception to the general rule when the carrier receives notice, at the time the shipment reaches its destination, that special circumstances require prompt delivery, and the carrier negligently delays in making the delivery. *E.g., Turner's Farms, Inc. v. Maine Central Railroad*, 486 F.Supp. 694, 699–700 (D.Me.1980). The rationale for this exception is that when the goods reach their destination, the risks of actual shipment are past and the carrier can take the necessary precautions to avoid negligent delay in delivery. *Id.* at 700. A carrier's undertaking to recondition rejected goods is analogous to a delay in delivery upon reaching their destination. The goods have arrived and the risks of shipment are past. If notified at this point of special damages that may result from reconditioning, the carrier may choose either not to recondition or to take special precautions in reconditioning. For this reason, we hold that the implied notice received by ETMF upon Contempo's rejection of its first delivery was sufficient to make ETMF liable for Contempo's special damages.

Finally, ETMF argues that Contempo cannot recover its labor costs expended before detecting the damage because Contempo accepted the second delivery of tubing without inspecting it. It contends that Contempo, having once rejected delivery, was on notice to inspect the goods when ETMF redelivered them. Such an inspection would have been a futile exercise because the damage could not be detected until Contempo tried to make the tubing into chairs. We will not deny Contempo recovery of its labor costs because of its failure to make an inspection that would not have revealed the damage. *Cf. M & S Tomato Repacking Co. v. Boston & Maine Corp.*, 310 F.Supp. 186, 189 (D.Mass.1970) (acceptance of shipment did not waive right to recover for concealed damage) (not a special damage case).

## IV

### Motion for New Trial

■ To obtain a new trial on the ground of newly discovered evidence, the movant must show that he failed to discover the evidence earlier although he exercised due diligence. *Moylan v. Siciliano*, 292 F.2d 704, 705 (9th Cir. 1961). In addition, the newly discovered evidence must be of facts existing at the time of trial. *Corex Corp. v. United States*, 638 F.2d 119, 121 (9th Cir. 1981); 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2808, at 55 & n. 94 (1973). The district court's denial of the motion will not be reversed absent an abuse of discretion. *Mayview Corp. v. Rodstein*, 620 F.2d 1347, 1352–53 (9th Cir. 1980).

ETMF first inspected the damaged tubing on April 3, 1978. At that time ETMF was shown only three of the seven bundles of tubing originally delivered, and ETMF assumed that Contempo had made the other four bundles into chairs and sold them. Before trial on February 12, 1979, Contempo made the tubing available for ETMF to pick up. ETMF, however, did not reinspect the tubing until February 22, 1979. At that time, some of the tubing was in the form of chair backs; the rest in small pieces. According to the affidavit of Robert Payne of ETMF, he returned to pick up the tubing four days later and found that the remaining tubing had been cut up and its salvage value destroyed. When Payne weighed the tubing, he discovered that only 4,980 pounds of the original 11,823 pounds of tubing remained.

Contempo submitted a counteraffidavit by its employee, Roy Chowdhury, stating that after the February 22 inspection, Payne did not return for three weeks. When he returned, Payne told Chowdhury to "junk" the rest of the tubing. Accordingly, Chowdhury cut up the remaining chair backs. Later, Payne called Chowdhury and asked him not to destroy any more of it; Chowdhury complied. In late March 1979, Payne picked up the tubing.

■ ETMF's contention that Contempo used or sold some of the tubing without returning it to ETMF for salvage does not justify a new trial. ETMF believed before trial that Contempo had disposed of four

bundles of tubing, but ETMF failed to investigate further. These facts do not establish due diligence on the part of ETMF.

█ ETMF's contention that Contempo destroyed the salvage value of the tubing after trial does not justify relief under Rule 59 because it is based on alleged facts that did not exist at the time of trial. The proper procedure for seeking relief on the basis of post-trial events is a motion to reopen to hear additional testimony. *First Beverages, Inc. v. Royal Crown Cola Co.*, 612 F.2d 1164, 1172 (9th Cir.), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980); 6A *Moore's Federal Practice* § 59.-04[13], at 59–36 (1979). Insofar as ETMF's motion alleges after-occurring events, we will treat it as a motion to reopen even though denominated a motion for a new trial.

█ A motion to reopen for additional proof is addressed to the sound discretion of the trial judge. *Thomas v. SS Santa Mercedes*, 572 F.2d 1331, 1336 (9th Cir. 1978); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331–32, 91 S.Ct. 795, 802–03, 28 L.Ed.2d 77 (1971). Although ETMF's contention that Contempo mutilated the tubing may have warranted reopening of the case if it had been uncontradicted, Chowdhury's affidavit stated that he cut up the tubing pursuant to ETMF's instructions. The trial judge apparently believed Chowdhury's version of the facts. Because of the abuse-of-discretion standard of review, the balance must be struck in favor of the trial judge's decision not to reopen for additional testimony on ETMF's allegations. *See Thomas v. SS Santa Mercedes*, 572 F.2d at 1336; *Natural Resources, Inc. v. Wineberg*, 349 F.2d 685, 692 (9th Cir. 1965), *cert. denied*, 382 U.S. 1010, 86 S.Ct. 617, 15 L.Ed.2d 525 (1966).

AFFIRMED.