**STARMAKERS PUBLISHING CORPORATION, Plaintiff,**

v.

**ACME FAST FREIGHT, INC., Defendant.**

**ACME FAST FREIGHT, INC., Third-Party Plaintiff,**

v.

**CHAS. J. BURNHAM CARTAGE, INC., Third-Party Defendant.**

**No. 84 Civ. 8637–CSH.**

United States District Court, S.D. New York.

July 17, 1985.

Bernard Raphan, P.C., New York City (Ralph Gavin Bell, New York City, of counsel), for plaintiff.

Moore, Berson, Lifflander & Mewhinney, New York City, and Garson & Grossman, Fairfax, Va.. (Charles D. Cole, Jr., New York City, and Neil Garson, Fairfax, Va., of counsel), for defendant and third-party plaintiff.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This action is before the Court on defendant Acme Fast Freight, Inc.'s ("Acme") motion for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), on two of plain-

tiff Starmakers Publishing Corporation's ("Starmakers") claims against it.

Starmakers, a shipper, filed this diversity action, pursuant to 28 U.S.C. § 1332, to recover damages for the alleged late delivery of goods shipped by Starmakers pursuant to a contract of carriage with Acme, a freight forwarder.

Starmakers alleges that on or about June 8, 1984, it entered into a contract of carriage with Acme whereby Acme agreed to transport certain printed matter from New York to Michigan for delivery to one of plaintiff's customers. This contract was in the form of a bill of lading.

According to Starmakers, Acme made representations that the material would arrive at its destination within a week. Starmakers does not indicate which individual at Acme made those representations, when they were made, or whether those representations were written or oral. In any event, plaintiff contends that due to disputes between defendant and its agents, the shipment arrived five weeks late and that, as a result, Starmakers lost the business of a valuable customer.

On November 30, 1984, Starmakers filed this action seeking damages, first, for negligent performance of duties owed to it by Acme ($109,925.52); second, for restitution of the amount paid pursuant to the terms of the contract ($205.52); third, for loss of the continued business of its customer ($100,000); and finally, for the diminution in value of the printed matter ($9,700.00). It should be noted that the amount of damages sought by plaintiff on its first cause of action, sounding in negligence, is equal to the sum of the alleged damages under the three remaining contractual claims.

Defendant has moved for dismissal of plaintiff's first and third causes of action.

Acme contends that Starmakers' first cause of action fails to state a claim for which relief may be granted because a shipper may not sue a carrier in negligence when goods are shipped under a contract of carriage evidenced by a bill of lading. It claims that plaintiff's exclusive remedy is for breach of the contract under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707 ("Carmack Amendment")[1]

Acme also seeks dismissal of plaintiff's third cause of action which is a claim for special damages. Acme contends that absent a specific allegation in the pleadings that the carrier had notice, actual or constructive, that such loss could occur, plaintiff cannot recover these damages.

In opposition to Acme's motion, Starmakers contends that the Carmack Amendment does not preempt a shipper's right to bring a common-law negligence claim against the carrier under state law. Starmakers further contends that special damages may, in exceptional cases, be recoverable even when they were not contemplated by the parties at the time of their agreement.

Finally, plaintiff claims that defendant's motion is premature because an impleaded third-party defendant has not yet filed an answer to the third-party complaint. Hence plaintiff contends that the pleadings are not closed, and that a motion for judg-

---

1. The Carmack Amendment to the Interstate Commerce Act was originally enacted in 1906 as 49 U.S.C. § 20(11). It was recodified by Congress in 1978, Interstate Commerce Act, Pub.L. No. 95–473, without substantive change as 49 U.S.C. § 11707. H.Rep. No. 1395, 95th Cong., Sess. 1 (1978), U.S.Code Cong. & Admin.News 1978, p. 3009, and amended for clarification but without substantive change, in 1980. Interstate Commerce Act, Pub.L. No. 96–258. H.Rep. No. 332, 96th Cong., 2d Sess. 1 (1980), U.S.Code Cong. & Admin.News 1980, p. 1224. Plaintiff's suggestion, without citing authority, that Congress intended to treat freight forwarders differently from railroad carriers is without merit.

The Carmack Amendment in its present form specifically lists freight forwarders as fully within its jurisdiction. Although 49 U.S.C. § 20(11) did not specifically name freight forwarders as subject to liability under it, it did list "transportation companies" who receive "property for transportation" interstate as governed by it. The Interstate Commerce Act in its old form defined transportation as "... all instrumentalities and facilities of shipment or carriage...." It is safe to assume, therefore, that companies such as Acme are, and always have been, subject to the same liability under the Carmack Amendment as railroads.

ment on the pleadings is inappropriate at this time.

## A. Maturity of Motion

■ As a threshold issue, I must consider plaintiff's objection to the form of defendant's motion. Fed.R.Civ.P. 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Plaintiff's contention that defendant's motion for judgment on the pleading is premature because the pleadings are not closed is without merit. Joinder of issue between these two parties requires only the filing of a complaint and an answer. Both have been filed. Since a grant of this motion would not dispose of Starmakers' entire cause of action against Acme, Acme's impleader action for indemnity from the third party remains unaffected. The third-party action is thus irrelevant to defendant's motion. I therefore proceed to consider the merits of defendant's motion.

## B. Common Law Negligence Claim

■ Although the Supreme Court has interpreted the Carmack Amendment as preempting state law in actions for breach of a contract of interstate carriage as evidenced by a bill of lading, *Adams Express Co. v. Croninger,* 226 U.S. 491, 506–507, 33 S.Ct. 148, 152–153, 57 L.Ed. 314 (1913) (state law invalidating maximum liability clause under contract of carriage is preempted by Carmack Amendment), *Southeastern Express Co. v. Pastime Amusement Co.,* 299 U.S. 28, 29, 57 S.Ct. 73, 74, 81 L.Ed. 20 (1936) (breach of contract of carriage action for negligent failure to deliver with due dispatch is governed by the Carmack Amendment), at least two federal circuits have held that a shipper is not barred from asserting other common law claims, e.g., negligence, against a carrier. *Litvak Meat Co. v. Baker,* 446 F.2d 329, 337 (10th Cir.1971) (although Carmack Amendment preempts common law in claims based exclusively on

the holder of a bill of lading, it does not oust all other remedial rights of shippers); *see also, Reed v. Aaacon Auto Transport, Inc.,* 637 F.2d 1302 (10th Cir.1981) (common law rules applicable to computation of damages not preempted by Carmack Amendment); *Marquette Cement Mfg. Co. v. Louisville & Nashville Railroad Co.,* 281 F.Supp. 944 (E.D.Tenn.1967), *aff'd.,* 406 F.2d 731 (6th Cir.1969) (contract of carriage may create state of affairs in which a general duty arises, breach of which may constitute actionable negligence). However, before a shipper can assert a cause of action sounding in tort, it must identify an extra-contractual duty which the carrier owed to it and breached. "It is only where there is a breach of a general duty, even though it may arise out of a relationship created by contract, that breach of duty may constitute actionable negligence." *Marquette, supra,* 281 F.Supp. at 947.

■ Starmakers asserts that Acme owed it several duties in addition to those owed under the terms of the contract. First, plaintiff claims that carriers owe shippers a duty to deliver goods with reasonable dispatch under federal law. In support of its contention plaintiff cites *Turner's Farms, Inc. v. Maine Central Railroad Co.,* 486 F.Supp. 694 (D.Me.1980), in which plaintiff therein was allowed to recover for the carrier's failure to deliver goods in a timely fashion. That action, however, was brought under the Carmack Amendment for breach of a contract/bill of lading which contained a "reasonable dispatch" clause. Thus while there is a duty to delivery promptly in *Turner's Farms,* that duty arose directly from the carrier's express contractual obligations.

Although the Supreme Court has established that a shipper can recover damages for a carrier's failure to deliver goods with due dispatch in a case where there is no contractual provision requiring timely delivery, *New York & Norfolk R.R. v. Peninsula Exchange,* 240 U.S. 34, 36 S.Ct. 230, 60 L.Ed. 511 (1916), the right to that remedy is derived from the Carmack Amendment's mandate that a carrier shall be lia-

ble to the holder of a bill of lading for any loss or damage to property shipped thereunder. *New York & Norfolk, supra,* at 38, 36 S.Ct. at 231. Thus, even an implied duty to deliver in a timely manner is a contractual obligation.

■ Second, Starmakers claims that Acme owes it independent duties under two provisions of the New York Uniform Commercial Code: § 7–302, which imposes liability on the issuer of a through bill of lading for breach of a connecting carrier; and § 7–309, dealing with the duty of care owed by a carrier who issues a bill of lading. 62½ N.Y.Unif.Com.Code §§ 7–302, 7–309 (McKinney's 1964). Starmakers' reliance on these provisions is misplaced. Both the practice commentary following § 7–302, and the official comment following § 7–309, state that the Carmack Amendment governs interstate shipments. Indeed, in light of the body of case law on Carmack's preemption of state law governing contracts of interstate carriage, i.e., *Adams Express, supra,* it is safe to assume that the New York provisions govern only intrastate shipments. Hence, they do not provide plaintiff as an interstate shipper with a cause of action independent of the breach of a contractual duty.

■ Finally, Starmakers contends that Acme is under a separate duty as a bailee for hire. This assertion is without merit. While it is true that a carrier may be thought of as a bailee, 14 Am.Jur.2d *Carriers* § 508 (1964), a bailor can only recover from its bailee in tort if his cause of action is one that is not necessarily dependent on the existence of the contract. 8 Am.Jur.2d, *Bailments* § 297 (1980). In the instant case, the only duty allegedly breached was the duty to deliver goods under the bill of lading contract.

■ Since Starmakers has identified no extra-contractual duty owed to it by Acme, the breach of which could constitute actionable negligence, plaintiff's sole recourse for failure to deliver the goods with due dispatch is a claim for breach of contract under the Carmack Amendment. *Marquette, supra,* 281 F.Supp. at 947.

## C. Special Damages

■ Special damages have been defined as "those that the carrier did not have reason to foresee as ordinary, natural consequences of a breach when the contract was made." *Contempo Metal Furniture Co. v. East Texas Motor Freight Lines, Inc.,* 661 F.2d 761, 765 (9th Cir. 1981). The measure of ordinary compensatory damages when a carrier fails to deliver a shipment to its destination within a reasonable time is the difference between the market value of goods at the time of delivery, and the time when they should have been delivered. *Great Atlantic & Pacific Tea Co. v. Atchison, Topeka & Santa Fe Railway Co.,* 333 F.2d 705 (7th Cir.1964); 11 Williston, *On Contracts* § 1344 (3d ed. 1968). Hence, Starmakers' claim for lost business from its customer is properly defined as special damages.

■ Special damages are not recoverable unless the party in breach had reason to foresee at the time the contract was made that that particular loss would be a probable result of the breach. *Restatement (Second) of Contracts* § 351. This is the common law rule of *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng.Rep. 145 (1854), and it has been rigorously applied by American courts in Carmack Amendment actions up to the present day. *Contempo Metal Furniture, supra,* 661 F.2d 761, 765 (9th Cir.1981) ("To recover special damages plaintiff must show that the carrier had notice of the special circumstances from which such damages would flow."); *Reed v. Aaacon Auto Transport,* 637 F.2d 1302, 1306 (10th Cir.1981) (special damages are recoverable when carrier has notice or knowledge of the special circumstances from which such damages would flow); *Hector Martinez & Co. v. Southern Pacific Transportation Co.,* 606 F.2d 106, 110 (5th Cir.1979) (shipper must demonstrate that such harm was not so remote as to make it unforeseeable to a reasonable person at the time of contracting). Thus in

the absence of an allegation that Acme had actual notice that a late shipment could cost Starmakers a customer, or could have reasonably foreseen that this loss could occur, Starmakers cannot recover on its third cause of action.

Plaintiff's reliance on *Turner's Farms, supra,* is inappropriate. Although the District of Maine held therein that the shipper could recover special damages even though the parties did not contemplate the potential loss at the time of contracting, the carrier in that case was given notice of the specific circumstances three days prior to actual delivery. At that time, the goods had already reached the station of destination. They had only to be delivered to the shipper's door. It was that three day period of actual notice that gave rise to the claim for special damages. Since the risks of interstate transport had ceased to exist, and since the carrier had received notice of the special circumstances requiring prompt delivery, the court made an exception to the rule that notice of special circumstances at the time of contracting is required for recovery of special damages.

In the case at bar, no notice, either at the time of contracting, or subsequent to the agreement, is averred by Starmakers. Nor does plaintiff's case appear to fall under the arrival-at-destination exception set forth in *Turner's Farms.* The policy underlying the notice requirement is to allow carriers to contemplate the risks involved in shipment, and negotiate contracts of carriage and set rates with those risks in mind. *Contempo, supra,* at 765. Therefore, unless Starmakers could allege that Acme had notice of special circumstances, or that its case falls under the *Turner's Farms* exception, it cannot hold Acme responsible for the special damages Starmakers claims to have suffered.

However, this Court cannot say that, given leave to amend its complaint, Starmakers could not allege facts sufficient to withstand Acme's motion for judgment on the pleadings. *Gumer v. Shearson, Hammill & Co., Inc.,* 516 F.2d 283 (2d Cir.1974). Since Rule 15 dictates that "leave to amend shall be freely given when justice so demands," Fed.R.Civ.P. 15(a), plaintiff is granted leave to amend its third cause of action if it can provide the necessary factual allegations of notice consistent with the requirements of F.R.Civ.P. 11. *See Eastway Construction Corp. v. Irving H. Kanarek and Robert Jacobs,* 762 F.2d 243, (2d Cir.1985).

*Conclusion*

Defendant's motion for judgment on the pleadings dismissing plaintiff's first and third causes of action is hereby granted, with leave to replead the third cause of action only within twenty (20) days of the date of this order.

The parties are directed to appear for a status conference on July 27, 1985 at 2:00 p.m. in Courtroom 312.

It is SO ORDERED.