943 F.2d 55
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
HILLSDALE ASSOCIATES, S.C. Enterprises, Shurl Curci,
Plaintiffs/Appellees,
v.
EAST CHANNEL CORPORATION, N.V., Defendant/Appellant.
 No. 90-55237.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 5, 1991.
 Decided Sept. 6, 1991.
 
 Before WILLIAM A. NORRIS, CYNTHIA HOLCOMB HALL and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This appeal arises out of a dispute between a limited partner, East Channel Corporation ("East Channel"), and the general partners, Hillsdale Associates, S.C. Enterprises, and Shurl Curci (collectively "Hillsdale"). The dispute revolves around a joint venture agreement which the partnership, Peninsula Associates ("the Partnership"), entered into to develop an office building. A jury returned a verdict in favor of Hillsdale, and East Channel appeals.
 
 
 3
 * East Channel first argues that the district court erred in ruling as a matter of law that Article 20 of the partnership agreement is inapplicable to the issue of consent to the joint venture and that Article 10 is the relevant consent provision. Article 10 makes Hillsdale as the general partner "responsible for the management and control of the Partnership business", but requires East Channel's approval of any "Major Capital Transaction." Article 20, which governs "Additional Partnerships," requires mutual agreement of the partners to the formation of new partnerships among them.
 
 
 4
 The district court ruled that Article 20 did not apply to the joint venture agreement between the Partnership and others because it applied only to "additional and separate partnerships among the Partners or among the Partners and others". (Emphasis added.) The partnership agreement unambiguously distinguishes between "Partners" and the "Partnership," defining "Partners" as "the General Partners and Limited Partner, collectively," and "Partnership" as the limited partnership created pursuant to the partnership agreement.
 
 
 5
 We hold that the district court did not err either in taking the issue of contract interpretation away from the jury or in rejecting East Channel's interpretation of Article 20. Article 20 explicitly applies only to the formation of new partnerships involving the "Partners," and the partnership agreement unequivocally distinguishes between "Partners" and the "Partnership." To accept East Channel's interpretation would require us to rewrite the Partnership Agreement by redefining the word "Partners" to include the "Partnership." That remedy is not available to East Channel in an action for breach of contract as distinguished from an action for reformation.
 
 
 6
 We recognize the force of East Channel's argument that to read Article 20 literally renders it an ineffectual agreement to agree among the Partners. Nonetheless, the language of Article 20 plainly does not apply to the formation of a new partnership between the Partnership and others. Moreover, East Channel's reading of Article 20 makes it redundant with Article 10, which gives Hillsdale broad responsibility for the management and control of the Partnership's business, conditioned upon obtaining East Channel's approval in specified circumstances, including approval of any "Major Capital Transaction," which the joint venture indisputably was. In other words, Article 10 circumscribes the general partner's authority to place the partnership assets at risk without the approval of the limited partner. It spells out notification and approval procedures in considerable detail, as well as the consequences of the limited partner's failure to approve a major capital transaction. Thus Article 10, not Article 20, provides the limited partner the protection against dilution of its capital investment that it bargained for and received.
 
 
 7
 Finally, East Channel's argument that Thomas Childers' testimony created an ambiguity on the issue of Article 20's applicability to the joint venture agreement is to no avail. As we read Childers' testimony, it is not at odds with the plain meaning of Article 20. Specifically, he referred in his testimony to the formation of "special purpose partnerships either between the parties or the parties and third parties." Reporter's Transcript 507. Thus Childers testified that Article 20 applied to the formation of new partnerships between the "parties" and third parties, not between the "Partnership" and third parties. While he did not say who he meant by "the parties", in context he seems to have been referring to the parties to the partnership agreement, rather than the Partnership itself. That would make his testimony totally consistent with the plain language of Article 20, which refers to "Partners," not "Partnership". In any case, while there may be ambiguity in Mr. Childers' testimony, there is none in Article 20.
 
 
 8
 We affirm the district court's ruling taking the contract interpretation issue away from the jury and deciding it as a matter of law in favor of Hillsdale. See Garcia v. Truck Ins. Exchange, 36 Cal.3d 426, 439, 204 Cal.Rptr. 435, 682 P.2d 1100 (1984) ("It is solely a judicial function to interpret a written contract unless the interpretation turns upon the credibility of extrinsic evidence, even when conflicting inferences may be drawn.")
 
 II
 
 9
 We also reject East Channel's argument that the jury verdict is not supported by substantial evidence. The jury found that Hillsdale had not breached the partnership agreement by entering into the joint venture agreement. The jury, in answer to special interrogatories, made two findings: First, that all facts required to be disclosed were disclosed to East Channel. Second, that Hillsdale did not fail to get East Channel's approval.
 
 
 10
 We do not agree with East Channel that Hillsdale conceded nondisclosure or lack of approval, only that the parties had abandoned Article 10's formal procedures for written disclosure and approval. Indeed, the jury was not asked whether Hillsdale failed to comply with those precise requirements, only whether Hillsdale had disclosed what it was required to disclose and had obtained East channel's approval.
 
 
 11
 We also disagree with East Channel that the jury findings are not supported by substantial evidence. It is for the jury, not the court, to determine whether any facts that may not have been disclosed were material.
 
 III
 
 12
 After trial, East Channel moved for a new trial based on the discovery that Childers, who had been its representative during the time of the joint venture, had obtained a loan of $60,000 from Hillsdale and a consulting job either during or just after the trial. Childers' declaration in opposition to the motion stated that he had not approached East Channel about a loan until after his testimony at trial. He approached Hillsdale because he had a cash flow problem and it had occurred to him that Hillsdale might be able to help him out, since they had worked together in the past.
 
 
 13
 East Channel's trial counsel declared that he had seen Childers having lunch with Hillsdale on the second day of his testimony, and that it was at that time that Childers told Hillsdale that he "blamed himself" for the breakdown in communications. Childers then testified at trial that he "blamed himself" for the breakdown in communications, something he had not said in earlier depositions and which Hillsdale made the most of during closing arguments.
 
 
 14
 The district court, acknowledging that Childers' testimony was critical, conducted an evidentiary hearing at which Childers testified and was cross-examined by East Channel. Childers testimony was substantially the same as in his declaration. He denied that he told Hillsdale before he testified that he blamed himself for the breakdown in communications. At the hearing, the only additional information that came out was that Childers was in other financial difficulties.
 
 
 15
 East Channel moved for relief under Rule 60(b), which provides for relief from a final judgment when there is newly discovered evidence or fraud by an adverse party.
 
 
 16
 Hillsdale points to the rule that the newly discovered evidence must be in existence during trial, Corex v. United States, 638 F.2d 119 (9th Cir.1981), and argues that Childers' loan and job happened after the trial was over. However, East Channel wants more discovery on precisely when the negotiations occurred.
 
 
 17
 Hillsdale also points out that evidence going to impeachment cannot normally be the basis of a new trial. See Wroblewski v. Exchange Insurance Assoc., 273 F.2d 158, 162 (7th Cir.1959). East Channel argues that evidence of perjury can be. See Harre v. A.H. Robins Co., 750 F.2d 1501 (11th Cir.1985), modified 866 F.2d 1303 (1989). The question is whether the evidence of the job was merely impeaching or whether it is evidence of perjury on Childers' part.
 
 
 18
 In view of the fact that the only difference between Childers' deposition testimony, which was undisputably unbiased, and Childers' trial testimony is that Childers placed some blame on himself for the communications breakdown does not give rise to a strong inference of perjury. The district court did not abuse its discretion in ruling that the post-trial evidence warranted neither additional discovery nor a new trial. See Contempo Metal Furn. Co. v. East Texas Motor Freight Lines, Inc., 661 F.2d 761, 766 (9th Cir.1981). See also H.K. Porter Co. v. Goodyear Tire & Rubber Co., 536 F.2d 1115, 1122 (6th Cir.1976) ("The district judge who presided over this protracted trial and who considered the evidence offered by Goodyear in support of its Rule 60(b) motion, did not believe that any fraud on the Court had been perpetrated on him. As an experienced trial judge he was in the best position to know. He was also in a good position to evaluate whether [the proposed discovery] ... would have made any difference in his holding.")
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3