**BURLINGTON AIR EXPRESS, INC.**
Plaintiff and Counterclaim
Defendant,

v.

**TRUCK AIR OF THE CAROLINAS,**
INC., Defendant and Counterclaim
Plaintiff.

No. CIV. A. 6:97–2384–13.

United States District Court,
D. South Carolina,
Greenville Division.

May 22, 1998.

Talcott J. Franklin, Charlotte, NC, for Plaintiff and Counterclaim Defendant.

Scott W. McMickle, Atlanta, GA, Rob Moseley, Greenville, SC, for Defendant and Counterclaim Plaintiff.

## ORDER

GEORGE ROSS ANDERSON, Jr., District Judge.

Burlington Air Express, Inc. (Plaintiff) brought suit against Truck Air of the Carolinas, Inc. (Defendant) seeking to recover damages under the Carmack Amendment, 49 U.S.C. § 14706 *et seq.* The Defendant filed a counterclaim for money owed by Plaintiff for services rendered. These monies were not associated with the origin of the Plaintiff's complaint.

Having jurisdiction to hear this case pursuant to 28 U.S.C. § 1331, a trial without a jury was held on April 13, 1998. The Court has thoroughly reviewed the evidence and considered arguments from both parties. The Court holds that the Defendant is not liable for the alleged damages incurred by the Plaintiff. Further, the Court holds that the Plaintiff is liable on Defendant's counterclaim for fourteen thousand and fifty three dollars ($14,053.00) plus interest as provided for in the party's contract. The Court further holds that the Defendant's request for attorney fees on the counterclaim is DENIED.

The following is the Court's findings of fact and conclusions of law made pursuant to Federal Rule of Civil Procedure 52. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such; to the extent that the following conclusions of law constitute findings of fact, they are so adopted.

### FINDINGS OF FACT

1. Plaintiff is a sophisticated shipper and carrier of goods in interstate commerce. Plaintiff provides global air freight services by overnight, second day, and deferred delivery, and also by ocean carriage.

2. Defendant provides surface transportation for freight previously or subsequently transported by air.

3. Both parties have previously engaged each others services on numerous occasions.

4. Often, Plaintiff will agree to ship cargo for its customers and utilize the services of motor carriers such as Defendant to trans-

port a shipment partially or entirely to its destination.

5. On October 22, 1996, Plaintiff tendered 15,000 pounds of cargo to Defendant for delivery from Greenville, South Carolina to Plaintiff's Toledo, Ohio terminal.

6. The shipment in question was a "Burlington to Burlington" shipment.

7. Upon receiving the cargo, Defendant was not informed by the Plaintiff of the ultimate destination or destinations for the subject cargo. Further, the Defendant was unaware that the shipment tendered to it consisted of several smaller shipments combined into one. The Defendant's driver was required to deliver the cargo by 12:30 p.m. on October 23, 1996 at Plaintiff's Toledo, Ohio terminal.

8. After the subject shipment was tendered to Defendant, Defendant's driver, for an unknown reason, parked the truck containing the subject cargo in the Ryder parking lot in Greenville, South Carolina. Defendant's driver failed to inform or advise either Plaintiff or Defendant of the truck's location.

9. The truck and the missing shipment were temporarily lost until approximately 10:30 a.m. on October 24, 1996. At trial, the parties were unsure of the driver's whereabouts. On October 24, 1996, Ryder informed Defendant that the truck was in their parking lot.

10. While the subject shipment was temporarily lost, Technotrim Corp. (Technotrim), a customer of Plaintiff, chartered an airplane from Greenville, South Carolina to Los Angeles, California, to ship a replacement shipment for their portion of the cargo temporarily lost.

11. No competent evidence has been produced regarding the reason or reasons that Technotrim needed to charter an airplane to transport a replacement shipment to its plant in Stockton, California. No reason was provided through competent evidence as to why Technotrim needed the shipment immediately.

12. Technotrim submitted an invoice to Plaintiff for $22,114.31 for the charter costs, which Plaintiff contends it paid.[1] Plaintiff reimbursed Technotrim as a gesture of gratitude and as a business decision. Plaintiff was not obligated under its contract with Technotrim to make this payment. Plaintiff seeks to recover such payment of $22,114.31 from Defendant in this lawsuit.

13. Neither Plaintiff nor Defendant had any prior warning that Technotrim would take it upon itself to charter an airplane to transport a replacement shipment to Technotrim's place of business in California in the event the subject shipment was temporarily lost or delayed.

14. Once the temporarily lost shipment was located, the portion of the cargo which was originally destined for Technotrim's plant in Stockton, California was shipped to such original destination via Plaintiff's normal channels. The cargo was shipped by ground transportation from Greenville, South Carolina to Toledo, Ohio and then by Plaintiff's air transportation system. Plaintiff seeks recovery of such costs from Defendant in the amount of $1,555.00, which comprises the cost to transport the subject cargo by van from Greenville, South Carolina to Plaintiff's Toledo, Ohio terminal and for $3,400.00 in costs associated with transporting the subject cargo via air freight from the Toledo, Ohio terminal to Los Angeles, California. Plaintiff submitted an amended Exhibit 3 which presented these costs as the alternative damage amount.

15. Plaintiff also seeks recovery of $9,600.00 associated with chartering an airplane from Greenville, South Carolina to McAllen, Texas to transport a portion of the cargo temporarily lost by Defendant. Milliken & Co. was the customer of this portion of the cargo and Williamson and Dickie was the consignee.

16. Plaintiff further seeks recovery of costs in the amount of $1,200.00 to contract a van to transport part of the subject shipment tendered to Defendant's driver directly to New York, New York to comply with the customer's schedule. Plaintiff also sought

1. Although Plaintiff contended this amount was paid, neither a canceled check nor a draft evi- dencing such payment was produced by Plaintiff.

recovery of its customer's expenses and lost time due to failure to deliver in the amount of $803.97. Right Source was the customer for this portion of the shipment and Right Source JFK was the consignee.

17. Plaintiff also seeks recovery of $185.00 in costs associated with freight flown by airline to Florida and $65.00 for special delivery. Right Source was also the customer for this portion of the shipment and Right Source Florida was the consignee.

Plaintiff further seeks $150.00 for the cost to deliver a portion of the subject cargo tendered to Defendant from the Toledo, Ohio terminal to Plaintiff's customer. Milliken & Co. was the customer for this portion of the shipment and Prince Corp—GRR was the consignee.

18. Plaintiff originally sought to recover a total of $40,942.38 from Defendant, but, after filing its complaint, Plaintiff received $4,101.66 from its customers in payment of a portion of Plaintiff's damages. Therefore, $36,840.72 was at issue. However, the Plaintiff submitted a revised request for damages which contained two alternatives. Alternative 1 requests $14,726.41 in damages and Alternative 2 seeks $33,440.72 in damages.[2]

19. At the time the contract of carriage was formed between Plaintiff and Defendant, and at the point of receiving the cargo, Defendant was unaware of the identity of the owners of the goods to be transported nor the ultimate destination or destinations of the cargo.

20. Defendant did not know or have reason to foresee that, in the event the subject shipment was temporarily lost or delayed, Plaintiff's customer, Technotrim Corp., would charter an airplane to forward a replacement shipment of cargo.

21. Defendant did not know or have reason to foresee that, in the event the subject shipment was temporarily lost or delayed, that Plaintiff would pay Technotrim's cost for chartering a plane to transport the goods as a business decision or as a gesture of gratitude.

22. Defendant did not know or have reason to foresee that, in the event the subject shipment was temporarily lost or delayed, that Plaintiff would charter an airplane to transport a portion of the subject cargo from Greenville, South Carolina to McAllen, Texas for its customer Milliken & Co. and the consignee Williamson and Dickie.

23. Defendant did not know or have reason to foresee that, in the event the subject shipment was temporarily lost or delayed, Plaintiff's customer, Right Source, would suffer expenses.

24. Defendant did not know or have reason to foresee that, in the event the subject shipment was temporarily lost or delayed, Plaintiff would incur special delivery charges that would not normally have been incurred in the ordinary course of business had the shipment not been temporarily lost or delayed.

25. For services rendered by Defendant to Plaintiff, both before and after the shipment giving rise to Plaintiff's claim, Plaintiff is indebted to Defendant in the amount of fourteen thousand and fifty three dollars ($14,053.00) plus interest as provided for in the party's contract.

### CONCLUSIONS OF LAW.

**I. State Law Causes of Action are Preempted by the Carmack Amendment**

■ Plaintiff has asserted causes of action under the Carmack Amendment, *i.e.,* 49 U.S.C. § 14706 *et. seq.* Since the subject shipment was an interstate shipment, the Carmack Amendment pre-empts any state law claims asserted. *Jane Rini v. United Van Lines, Inc.,* 104 F.3d 502 (1st Cir.1997); *Moffit v. Bekins Van Lines Co.,* 6 F.3d 305 (5th Cir.1993); *George R. Hall, Inc. v. Superior Trucking Co., Inc.,* 532 F.Supp. 985 (N.D.Ga.1982). All of the Circuit Courts that have considered the Carmack Amendment pre-emption issue have concluded that the Carmack Amendment pre-empts all state law remedies. *Underwriters at Lloyds v. North American Van Lines,* 890 F.2d 1112, 1115–

---

**2.** At trial, Plaintiff's request for damages double counted certain expenses. The Plaintiff submitted a revised Exhibit 3 breaking down the original request for damages and an alternative request for damages which presented damage amounts in the alternative.

1121 (10th Cir.1989) (citations omitted); *See Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700 (4th Cir.1993). Therefore, the Carmack Amendment governs this case and federal law controls the determination of liability and the measure of damages with respect to Plaintiff's claims. *Dublin Company v. Ryder Truck Lines, Inc.*, 417 F.2d 777, 778 (5th Cir.1969).

## II. Damages That Can Be Recovered Under the Carmack Amendment

The Carmack Amendment makes motor carriers liable for damage caused to property it transports in the amount of "the actual loss or injury to the property." *Contempo Metal Furniture Co. v. East Texas Motor Freight Lines, Inc.*, 661 F.2d 761, 764 (9th Cir.1981). The general rule for determining the amount of damages is the difference between the market value of the property in the condition in which it should have arrived at its destination and its market value and the condition in which it did arrive. *Id.* Although the Carmack Amendment references "actual loss or injury to the property," the Carmack Amendment governs a shipper's claims for damages resulting from delay in transit. *Hector Martinez & Co. v. Southern Pacific Transp. Co.*, 606 F.2d 106, 108 (5th Cir.1979).

The primary purpose of the Carmack Amendment was to codify a uniform system of carrier liability that would provide certainty to both shippers and carriers by enabling the carriers to assess their risks and predict their potential liability for damages. *Pietro Culotta Grapes, Ltd. v. Southern Pacific Transp. Co.*, 917 F.Supp. 713, 716 (E.D.Cal.1996)(citing *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407 (7th Cir.1987)). Besides compensating an injured Plaintiff, the Carmack Amendment also seeks to protect a carrier from unforeseeably large losses. *Hector Martinez*, 606 F.2d at 109. In outlining the protections afforded to motor carriers under the Carmack Amendment, the Fifth Circuit Court of Appeals stated as follows:

> An award of full compensation for all of the Plaintiff's losses due to the breach, no matter how unforeseeable or bizarre these losses are, would simply be unfair to the Defendant as well as possibly paralyzing to commerce.
>
> *Id.*

Under the Carmack Amendment, the common law rule that special or consequential damages are not usually recoverable from a motor carrier has not been altered. *See Contempo Metal*, 661 F.2d at 764. Special damages are those that the carrier did not have reason to foresee as ordinary, natural consequences of a breach of the contract of carriage when such contract was formed. *Id.* 765. Damage is foreseeable by the carrier if it is the proximate and usual consequence of the carrier's action. *Hector Martinez*, 606 F.2d at 109. In other words, special damages are those damages other than physical damage to the cargo which can be measured by the value of the cargo in the market place or otherwise. Saul Sorkin, *Goods in Transit* § 11.09[1].

To recover special damages, the Plaintiff must show that the carrier had notice of the special circumstances from which such damages would flow. *Contempo Metal*, 661 F.2d at 765. Thus, if the damages which Plaintiff seeks to recover were not reasonably foreseeable as being the proximate and usual consequence of the Defendant's alleged improper actions, then Plaintiff has the burden of demonstrating that the carrier had notice of the special circumstances from which its damages would flow. *Id.* This notice must be present at the time the contract of carriage is consummated. *Id.; See also Main Road Bakery, Inc. v. Consolidated Freightways, Inc.*, 799 F.Supp. 26, 28 (D.N.J.1992).

Plaintiff requests two alternatives of damages. This Court will address the damage requests from both alternatives submitted. Where the damage requests for each alternative overlap, they will be addressed together.

Plaintiff seeks recovery of $22,114.31, representing the cost of a charter airplane incurred by Plaintiff's customer Technotrim. Upon learning that the shipment tendered to Defendant by Plaintiff was temporarily lost or delayed, Technotrim chartered an airplane to transport a replacement shipment of cargo to its Stockton, California plant. Plaintiff

contends that it is an industry standard that, in the event a shipment is temporarily lost or delayed by a motor carrier, a shipper is entitled to charter an airplane to achieve on-time delivery and pass the costs on to the motor carrier.

However, Plaintiff has produced no competent evidence supporting this contention. Significantly, this Court finds the evidence does not reveal that either Plaintiff or Defendant had any prior warning that Technotrim would take this action in the event the subject shipment was temporarily lost or delayed. Furthermore, this Court finds that Plaintiff did not even know nor did they present any credible evidence pertaining to the reason for Technotrim's urgent need for the shipment. Lastly, Plaintiff paid this amount gratuitously to Technotrim, a fact Defendant could not have known or foreseen.

The case *sub judice* is similar to the situation faced by the court in *Florida East Coast Ry. Co. v. Beaver Street Fisheries, Inc.,* 537 So.2d 1065 (Fla.Dist.Ct.App.1989). In *Beaver Street,* the court concluded that the law regarding special damages seeks to protect a defendant from unforeseeably large losses. *Id.* at 1068. The court reasoned that allowing such damages to be recovered from motor carriers would be potentially paralyzing to interstate commerce. As in *Beaver Street,* there is no competent substantial evidence in the instant case to support a finding that the carrier had reason to know or foresee that, in the event the subject shipment was lost or damaged, the shipper would charter an airplane to forward a replacement shipment. Thus, such damages cannot be recovered from Defendant in this matter.

■ With respect to Plaintiff's claimed damages in the amount of $9,600.00 representing the cost of a jet charter from Greenville, South Carolina to McAllen, Texas, for customer Milliken & Co. and consignee Williamson and Dickie, such damages also constitute special damages which cannot be recovered from Defendant under the Carmack Amendment. In particular, Defendant had no notice or reason to foresee that, in the event the subject shipment was temporarily lost or delayed, Plaintiff would be required to charter an airplane to transport a portion of

the subject cargo from Greenville, South Carolina to McAllen, Texas. Again, this Court finds that Plaintiff has failed to present any competent evidence supporting its contention that it is an industry standard that, in the event a shipment is temporarily lost or delayed, the shipper or its customer may charter an airplane and compel the motor carrier to pay the charter costs.

Plaintiff failed to inform the Defendant of its expectations at the time the contract of carriage was formed. Defendant is not liable for Plaintiff's uncharacteristic actions. Further, Plaintiff is precluded under the Carmack Amendment from recovering such special damages from Defendant.

■ Plaintiff seeks, as part of alternative one, damages in the amount of $4,955.00. Plaintiff asserted at trial that if the cost associated with chartering the jet from Greenville, South Carolina to California is not recoverable, then Plaintiff's costs associated with transporting the original Technotrim shipment to California should be recoverable.

Such damages cannot be recovered from Defendant under the Carmack Amendment. At the time the contract of carriage was formed, and at the time Defendant received the subject cargo, Defendant did not know or have reason to foresee that, in the event the subject shipment was temporarily lost or delayed, that Plaintiff would be forced to transport the portion of the cargo originally destined for Technotrim and require Defendant to pay any and all costs associated with the transport.

Plaintiff would like Defendant to pay all expenses associated with the delivery of the cargo. Defendant could not have known that it would be paying all expenses that Plaintiff may have incurred during its delivery. The evidence also does not show that Plaintiff told Defendant anything about paying all expenses incurred. Allowing Plaintiff to recover all damages that it requests would provide Plaintiff with an all expenses paid, cost-free, delivery to Technotrim. Such damages are not recoverable by the Plaintiff.

Allowing the alleged damages to the Plaintiff would negatively affect uniformity and

certainty in terms of a national scheme of motor carrier liability. If the motor carriers are compelled to reimburse a shipper for payments gratuitously made to its customers in order to preserve business relationships or for special damages, the intent of the statute is lost or disregarded. *See Hector Martinez,* 606 F.2d at 109. If motor carriers, such as Defendant, were compelled to pay damages which shippers incur despite the fact that such shippers do not bear liability for such damages, the affect upon interstate commerce could be paralyzing. Allowing the Plaintiff to recover these damages would begin the slide towards shippers having unfettered discretion in incurring expenses to ship cargo, thus burdening carriers unduly and destroying the uniformity intended by the Carmack Amendment.

With respect to the remaining specialized delivery charges Plaintiff seeks to recover from Defendant, such charges are not the usual and proximate result of the breach of a contract of carriage, such as the breach of contract in this case. Accordingly, such damages constitute special damages. As there is no competent substantial evidence to indicate that Defendant knew or had reason to foresee that, in the event the subject shipment was temporarily lost or delayed, Plaintiff would incur such costs, Defendant bears no liability to Plaintiff with respect to such charges.

### III. Defendant's Counterclaim

Defendant provided miscellaneous transportation services to Plaintiff both before and after the subject incident giving rise to Plaintiff's complaint. Defendant is entitled to reasonable compensation for such services. The Court finds that the reasonable compensation for these services is fourteen thousand and fifty three dollars ($14,053.00). The Court finds that the Defendant did not establish with competent evidence any money owed above $14,053.00.

Per the "terms of payment" in the contract, the Court concludes that Defendant is entitled to recover fourteen thousand and fifty three dollars ($14,053.00) plus interest as provided for in the party's contract.

### IV. Conclusion

IT IS, THEREFORE, ORDERED that the Defendant is not liable to the Plaintiff for the expenses alleged.

IT IS FURTHER ORDERED that the Plaintiff is liable to the Defendant on its counterclaim in the amount of $14,053.00 plus interest as specified. IT IS FURTHERED ORDERED, that Defendant is NOT entitled to attorney fees on the counterclaim.

IT IS SO ORDERED.