Daniel R. TAYLOE and Vicki L. Tayloe, husband and wife, Plaintiffs,

v.

KACHINA MOVING & STORAGE, INC., an Arizona corporation; Mayflower Transit, Inc., an Indiana corporation, Defendants.

No. CV96–0794PHX–DAE.

United States District Court, D. Arizona.

Sept. 8, 1998.

William P. Hovell, Hovell Law Offices PC, Scottsdale, AZ, for Plaintiffs.

Jeffrey R. Simmons, DeConcini, McDonald, Brammer, Yetwin & Lacy PC, Phoenix, AZ, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

The court heard Plaintiffs' and Defendants' Motions on August 13, 1998. William P. Hovell, Esq., appeared at the hearing on behalf of Plaintiffs; Jeffrey R. Simmons, Esq., appeared at the hearing on behalf of Defendants. After reviewing the motions and the supporting and opposing memoranda, the court GRANTS IN PART and DENIES IN PART Defendants' Motion for Partial Summary Judgment and DENIES Plaintiffs' Motion for Partial Summary Judgment.

### BACKGROUND

In June of 1993, Plaintiffs' family relocated from Arlington Heights, Illinois, to Phoenix, Arizona, as part of a Motorola relocation. Motorola had an arrangement with Defendant Mayflower Transit, Inc. ("Mayflower")

for the packing, moving, and storage of Plaintiffs' goods. Motorola paid for the cost of the move.

Because Plaintiffs were selling their home in Arlington Heights, some of their household furnishings were temporarily stored at Mayflower's Illinois agency, Glen Ellyn–Mayflower. Additionally, because Plaintiffs were initially moving into an apartment in Arizona, some of their household goods were to be delivered directly to Plaintiffs' apartment and others were to be held in long-term storage at Mayflower's Phoenix agency, Kachina Moving and Storage, Inc. ("Kachina") until Plaintiffs' home was completed.

On May 6, 1993, four packers from Glen Ellyn–Mayflower packed Plaintiffs' household goods. At that time, Plaintiff Vicki Tayloe allegedly asked Mayflower to store and transport their household goods in a dry, temperature-controlled environment because of her allergies. On June 9, 1993, three packers from Glen Ellyn–Mayflower packed additional boxes of Plaintiffs' household goods. On June 11, 1993, two Mayflower employees (Lee Jessie Stewart and Florence Stewart) picked up some of Plaintiffs' household goods which were stored in Neosho, Missouri.

On June 10, 1993, Mayflower issued a Bill of Lading covering the transportation of Plaintiffs' household goods from Illinois to Arizona. Upon their arrival in Arizona, all of Plaintiffs' household goods were stored at a facility owned and maintained by Defendant Kachina. These goods remained in storage until March of 1994, approximately nine months, when the Plaintiffs moved into their new home in Arizona.

Plaintiffs allege that when Kachina delivered their household goods to their home in Arizona, a number of items were missing, some were water damaged, and others were in a damaged or crushed condition. Plaintiffs additionally allege that some of the moving boxes had mold on them because the boxes and their contents had been wet during storage. Plaintiffs aver that the mold on the boxes contaminated Plaintiffs' new home, and that as a result, Plaintiff Vicki Tayloe developed a severe allergic reaction and was hospitalized on two occasions.

Plaintiffs filed a claim with Mayflower on May 31, 1994. Mayflower responded by offering Plaintiffs substantially less than the amount they requested, which Plaintiffs declined to accept.

In their Second Amended Complaint, Plaintiffs allege that the appraised value of the damaged and missing goods is $221,549.45, and that the value of additional items is $19,971.27. The repair costs for certain items allegedly total $7,905.00. The alleged cost of the decontamination of Plaintiffs' home is estimated to be $45,529.69, and the decline in the value of Plaintiffs' home is estimated to be $25,000.00. Plaintiff Vicki Tayloe also alleges that she sustained personal injuries as a result of the mold contamination.

On September 21, 1997, Plaintiffs Daniel R. Tayloe and Vicki L. Tayloe ("Plaintiffs") filed a Motion for Partial Summary Judgment. On September 29, 1997, Defendants Kachina Moving & Storage, Inc. and Mayflower Transit, Inc. ("Defendants") filed a Motion for Partial Summary Judgment.

### STANDARD OF REVIEW

Rule 56 provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings,

nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. 2505. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. 2505. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

**I. Defendants' Motion for Partial Summary Judgment**

On September 29, 1997, Defendants filed a motion for partial summary judgment asking the court to find that: "(1) the Carmack Amendment preempts all of Plaintiffs' state law claims stemming from the interstate move, including their negligence and breach of contract claims; (2) Plaintiffs' claims for consequential or special damages arising out of the move are not recoverable; (3) Mayflower's maximum liability, if any, is limited to $100,000, the amount of the released valuation declared on the Bill of Lading by Plaintiff Daniel Tayloe; and (4) Kachina is not a proper party defendant because Kachina's status remained at all times as Mayflower's disclosed household goods agent; therefore, Kachina has no liability to Plaintiffs separate and independent from that of Mayflower." Defendants' Motion for Partial Summary Judgment, p. 2.

**A. Whether Plaintiffs' State Law Claims are Preempted by the Carmack Amendment**

In their Second Amended Complaint, Plaintiffs allege four claims against the Defendants: (1) a Carmack Amendment claim, (2) a breach of contract claim, (3) breach of an implied duty to perform work in a skillful and workmanlike manner, and (4) a negligence claim. All of Plaintiffs' claims arise out of the interstate move of Plaintiffs' household goods from Illinois to Arizona, and the subsequent storage of Plaintiffs' goods in Arizona. In these claims, Plaintiffs allege that Defendants improperly transported and/or stored Plaintiffs' belongings.

The Carmack Amendment preempts all state law claims arising out of the interstate transportation of household goods by a common carrier. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377 (5th Cir. 1998); *Hughes Aircraft Co. v. North American Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir.1992); *Phoenix Assurance Co. v. K–Mart Corp.*, 977 F.Supp. 319 (D.N.J.1997). This conclusion is supported by a long line of cases, beginning with the Supreme Court's decision in *Adams Exp. Co. v. E.H. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913). In the *Adams* case, the Court ex-

plained that the Carmack Amendment "supercedes all the regulations and policies of a particular state upon the same subject .... Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulations with reference to it.... [W]hen Congress [has] acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the state cease[s] to exist." 226 U.S. at 505–06, 33 S.Ct. 148; *see also Morris*, 144 F.3d 377; *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 504 (1st Cir.1997) (holding that state law claims are preempted by the Carmack Amendment); *Accura Systems, Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 876 (5th Cir.1996) (same); *Shao v. Link Cargo (Taiwan) Limited*, 986 F.2d 700, 706–07 (4th Cir.1993) (same); *Underwriters at Lloyds of London v. North American Van Lines*, 890 F.2d 1112, 1121 (10th Cir.1989) (same); *Hughes v. United Van Lines*, 829 F.2d 1407, 1415 (7th Cir.1987) (same); *Hopper Furs, Inc. v. Emery Air Freight Corp.*, 749 F.2d 1261, 1264 (8th Cir.1984) (same); *W.D. Lawson & Co. v. Penn Cent. Co.*, 456 F.2d 419, 421 (6th Cir.1972) (same).

■ Plaintiffs argue that despite this broad pronouncement of preemption, their state law claims against Defendant Kachina are not preempted by the Carmack Amendment because Kachina stored and transported Plaintiffs' goods within the State of Arizona, and consequently was not an interstate carrier.

After examining the facts of this case, the court finds that Plaintiffs' argument is without merit. The transportation and storage of Plaintiffs' goods within the State of Arizona was part of Plaintiffs' interstate move from Illinois. The Bill of Lading specified that Plaintiffs' goods were to be transported from Illinois to Arizona, and that upon their arrival in Arizona, Plaintiffs' goods were to be temporarily stored pending completion of the construction on Plaintiffs' Arizona home.[1] Kachina did not issue Plaintiffs a separate bill of lading, nor did Kachina enter into a separate contract with Plaintiffs for the transportation and storage of their goods within the State of Arizona. Accordingly, because Plaintiffs' claims arise out of the interstate transportation of their household goods from Illinois to Arizona, and because Kachina did not undertake any additional duties with respect to the transportation and storage of Plaintiffs' goods in Arizona, the court finds that Plaintiffs' state law claims are preempted against both Defendants under the Carmack Amendment.[2] Accordingly, the court hereby GRANTS Defendants' motion for partial summary judgment with respect to the preemption of Plaintiffs' state law claims and DISMISSES Plaintiffs' Second, Third and Fourth Claims for Relief.

**B. Whether Plaintiffs Can Recover Special and Consequential Damages under the Carmack Amendment**

■ Under the Carmack Amendment, a carrier is liable in damages to the shipper for the actual loss or injury to the property. 49 U.S.C. § 11707(a)(1).[3] "The general rule for

---

1. The arrangements which Plaintiffs made for the storage of their household goods, prior to the shipment of these goods to Arizona, are part of the original continuous interstate move.

2. The fact that Plaintiffs' goods were ultimately stored in Arizona for nine months does not change the character of the move. The Bill of Lading contemplated temporary storage of Plaintiffs' goods in Arizona at Kachina's storage facility. However, Plaintiffs requested that their goods be kept in storage for a longer period of time than that specified in the original Bill of Lading because the construction of their Arizona home was not yet complete. Plaintiffs have produced absolutely no evidence which suggests that Plaintiffs' goods were converted from storage-in-transit to permanent storage. Under 49 C.F.R.

Section 1056.12, Mayflower was required to give Plaintiffs notice if their goods were converted from storage-in-transit to permanent storage. It is undisputed that Mayflower never gave Plaintiffs such notice in this case. Furthermore, Kachina did not issue a separate warehouse storage contract and delivery bill of lading to Plaintiffs. Accordingly, the court finds that the fact that Plaintiffs' goods were stored in Arizona for nine months does not change the character of the interstate move.

3. The Carmack Amendment was recodified in 1995. However, because there is no indication that Congress intended the 1995 version of the Carmack Amendment to apply retroactively, the court will apply the earlier code sections which were in effect at the time of Plaintiffs' move. In

determining the amount of damages is the difference between the market value of the property in the condition in which it should have arrived at its destination and its market value in the condition in which it did arrive." *Contempo Metal Furniture Co. of California v. East Texas Motor Freight Lines, Inc.*, 661 F.2d 761, 764 (9th Cir.1981). The Carmack Amendment did not, however, alter "the common law rule that special, or consequential, damages are not usually recoverable in an action for breach of contract. Special damages are those that the carrier did not have reason to foresee as ordinary, natural consequences of a breach when the contract was made. To recover special damages, the plaintiff must show that the carrier had notice of the special circumstances from which such damages would flow." *Id.* at 765 (citations omitted). "The purpose of this rule is to enable the carrier to protect itself from special damages by negotiating special contractual terms, declining the shipment, or taking special precautions to avoid the loss." *Id.* (citations omitted).

■ In their statement of facts, Plaintiffs allege that they specifically directed the movers "to store and transport their household goods, in a dry, temperature controlled environment, because of [Plaintiff Vicki Tayloe's] allergies." Plaintiffs' Statement of Facts in Support of Motion for Partial Summary Judgment, p. 2. Mrs. Tayloe alleges that she informed both the packers and drivers of this request. When Plaintiffs' household goods arrived at their home in Arizona on March 1 and 2, 1994, Plaintiffs contend that there was mold growth on the outside of some of the boxes and on some of the contents of the boxes. Plaintiffs allege that the mold developed because some of the boxes and their contents had been wet while they were in long-term storage. Plaintiffs aver that as a result of the exposure to this mold, Mrs. Tayloe developed a severe allergic reaction, was hospitalized on two occasions, and suffered a reoccurrence or aggravation of her asthma.

Defendants argue that Plaintiffs never informed them of Mrs. Tayloe's allergies or of the need to take special precautions with respect to the handling and storage of Plaintiffs' goods. In support of this argument, Defendants provide the depositions of employees from Glen Ellyn–Mayflower and Kachina. In these depositions, the employees state that Plaintiffs did not inform them of Mrs. Tayloe's allergies. *See* Defendants' Statement of Material Facts in Dispute, ¶¶ 7–12. Defendants additionally point out that in the Special Instructions sheet there is no mention of Mrs. Tayloe's allergies. *Id.* at ¶ 10.

The court finds that there is a triable issue of material fact as to whether Defendants were put on notice of the need to take special precautions with respect to the transportation and storage of Plaintiffs' household goods. Plaintiffs insist that Mrs. Tayloe informed the movers and the drivers of her allergies and of the need to store and transport the goods in dry, temperature-controlled environment. On the other hand, Defendants have produced some evidence which indicates that Mrs. Tayloe did not provide the movers with this information. In a motion for summary judgment, the court is not permitted to weigh the evidence or judge the credibility of the witnesses. Accordingly, viewing the facts in the light most favorable to the Plaintiffs, the court finds that there is a triable issue of material fact as to whether Defendants were on notice of the need to take special precautions with respect to the transportation and storage of Plaintiffs' household goods.[4] Defendants' motion for

---

any event, the fact that the Carmack Amendment was recodified is insignificant because the differences between the earlier version of the Carmack Amendment and the recodified version do not materially alter Defendants' liability under the Carmack Amendment or Plaintiffs' remedies under the Amendment.

4.  Defendants argue that under the parol evidence rule, Plaintiffs are barred from introducing evidence regarding special and consequential dam-

ages. Defendants assert that such evidence is a material alteration of the Bill of Lading and therefore cannot be considered by the court. The court finds that Defendants' argument is without merit. The Bill of Lading does not contain any terms which purportedly limit Mayflower's liability for special and consequential damages. Under general principles of contract law, Plaintiffs are entitled to recover special and consequential damages on their breach of contract claim under the Carmack Amendment, if they

summary judgment on Plaintiffs' claim for special and consequential damages is therefore DENIED.[5]

### C. Whether Mayflower's Liability is Limited to $100,000

As noted above, under the Carmack Amendment, a common carrier is liable to the shipper for "actual loss or injury to property." 49 U.S.C. § 11707(a). However, a carrier may limit its liability for any such damage pursuant to 49 U.S.C. § 10730, which provides that

> [t]he Interstate Commerce Commission may require or authorize a carrier ... to establish rates for transportation of property under which the liability of the carrier for that property is limited to a value established by written declaration of the shipper, or by a written agreement, when that value would be reasonable under the circumstances surrounding the transportation.

Before a carrier's attempt to limit its liability will be effective, the carrier must (1) maintain a tariff in compliance with the requirements of the Interstate Commerce Commission; (2) give the shipper a reasonable opportunity to choose between two or more levels of liability; (3) obtain the shipper's agreement as to his choice of carrier liability limit; and (4) issue a bill of lading prior to moving the shipment that reflects any such agreement. " The carrier has the burden of proving it has complied with these requirements." *Hughes,* 970 F.2d at 611–12 (citations omitted).

#### 1. Mayflower's Tariff

In this case, Mayflower had a prearranged agreement with Motorola, one of the Plaintiffs' employers, for the transportation of Plaintiffs' household goods from Illinois to Arizona. Under this agreement, Mayflower

and Motorola negotiated the rate to be charged for the move of Motorola employees, including Plaintiffs. The Motorola contract, and the addendum thereto, expressly state that Mayflower's tariffs apply to the shipment of the employees' household goods. *See* Motorola Contract, ¶¶ 4, 12; Addendum to Motorola contract, ¶ 1. The addendum specifies that Tariff HHGCB 400–H applies to the shipment of household goods pursuant to the Motorola contract. This tariff was in effect at the time of Plaintiffs' move. The court therefore finds that Mayflower has established its compliance with the first requirement.[6]

Before a limitation on liability may be considered effective, the limitation must be in writing and the carrier must give the shipper a reasonable opportunity to choose between two or more levels of liability. *Hughes,* 970 F.2d at 612. " 'A reasonable opportunity to choose between different levels of coverage means that the shipper had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice.' " *Id.* (quoting *Carmana Designs Ltd. v. North American Van Lines Inc.,* 943 F.2d 316, 320 (3rd Cir.1991)). "The agreement must evidence an 'absolute, deliberate and well-informed choice by the shipper.' " *Id.* (citation omitted).

In this case, the agreement between Motorola and Mayflower limited Mayflower's liability to $100,000.00. Plaintiffs do not contest the fact that Motorola had a reasonable opportunity to choose between different levels of liability and that Motorola made the decision to limit Mayflower's liability in exchange for a discounted rate of shipment. In fact, Plaintiffs admit that Mayflower's liability was established in its contract with Motorola. Plaintiffs' Response to Defendants' Motion for Summary Judgment, p. 6.

---

can establish that Mayflower was put on notice of the potential for such damages. Accordingly, the court finds that the parol evidence rule does not bar introduction of Plaintiffs' evidence regarding special and consequential damages.

5. However, as explained below, Mayflower's liability for *all* damages is limited to $100,000. *See infra* note 6 and accompanying text.

6. Although Plaintiffs were not a party to the agreement between Mayflower and Motorola, Plaintiffs' move was made pursuant to this agreement and Motorola paid for Plaintiffs' move. As an employee of Motorola, the Plaintiffs would be bound by the agreement Motorola made with Mayflower, including the provision limiting Mayflower's liability to $100,000.00.

In signing the Bill of Lading, Plaintiffs were given an opportunity to declare the released value of their shipment. Mr. Tayloe filled in an amount of $100,000, Mayflower's maximum liability under its contract with Motorola. Accordingly, the court finds that Mayflower has established its compliance with the second and third requirements.[7]

Under the fourth requirement, Mayflower must establish that it issued a Bill of Lading prior to the shipment of Plaintiffs' goods. Prior to the actual transportation of Plaintiffs' goods from Illinois to Arizona, Plaintiffs requested that Mayflower place some of their goods in temporary storage with Mayflower's origin agent Glen Ellen–Mayflower. Before these goods were placed in storage, Mr. Tayloe executed a Bill of Lading for the storage of these goods while they were in transit at origin. Additionally, before Mayflower transported Plaintiffs' goods from Illinois to Arizona, Mr. Tayloe executed a separate Bill of Lading to cover the interstate transportation of Plaintiffs' goods. The court therefore finds that Plaintiffs were issued a Bill of Lading prior to the transportation of their goods from Illinois to Arizona.

7. Plaintiffs argue that although Mr. Tayloe did fill in a released value of $100,000, "[h]e was told by Defendants' agent, and believed that there was no importance to the figure he put down." Plaintiffs' Response, p. 7. Plaintiffs additionally allege that Mr. Tayloe had only seconds to fill in the blanks, and did not have an opportunity to determine the replacement value of his goods. *Id.* Even if the court were to assume these facts as true, it would not alter Mayflower's liability in this case. Mr. Tayloe wrote down $100,000 as the estimated value of their household goods. However, even if Mr. Tayloe would have filled in a greater amount had he been aware of such a possibility, Mayflower's maximum liability was contractually limited to $100,000. Accordingly, even if Plaintiffs had filled in a greater amount in the Bill of Lading, Plaintiffs would not be able to recover more than $100,000 for the alleged damage to their household goods.

Furthermore, in the absence of fraud or bad faith, Plaintiffs cannot reform the Bill of Lading without the consent of the carrier based on unilateral mistake. *See Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1418–19 (7th Cir.1987). Here, Plaintiffs have not alleged that Mayflower or any of its agents committed fraud or acted in bad faith. Accordingly, Plaintiffs cannot seek to void the contract based on unilateral mistake.

8. The $100,000 limitation on liability applies to *all* damages allegedly suffered by Plaintiffs, in-

As Mayflower has established its compliance with all of the necessary requirements, the court finds that Mayflower effectively limited its liability for the shipment of Plaintiffs' household goods to $100,000. Damages in excess of that amount are not recoverable against Mayflower. The court therefore GRANTS Defendants' motion for partial summary judgment with respect to the limitation on Mayflower's liability.[8]

## II. Whether Kachina is a Proper Defendant in this Case

As noted in the first section of this order, Plaintiffs state law claims against the Defendants are preempted by the Carmack Amendment. Therefore, Kachina is only a proper Defendant in this case if it can be sued under the Carmack Amendment. The Carmack Amendment imposes absolute liability on a common carrier and/or freight forwarder for the actual damage caused to a shipper's goods.[9] Consequently, Kachina can only be sued under the Carmack Amendment if it is a common carrier or a freight forwarder subject to the jurisdiction of the Interstate Commerce Commission.[10]

cluding special and consequential damages. *Southeastern Express Co. v. Pastime Amusement Co.,* 299 U.S. 28, 29–30, 57 S.Ct. 73, 81 L.Ed. 20 (1936).

9. Under the Carmack Amendment, a common carrier may also be liable for the special or consequential damages suffered by the shipper. *Contempo,* 661 F.2d at 765.

10. It is clear to this court that Kachina cannot be considered a freight forwarder. A "freight forwarder" is defined under the Interstate Commerce Act as:

a person holding itself out to the general public ... to provide transportation of property for compensation and in the ordinary course of business-
(A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution of operations of shipments;
(B) assumes responsibility for the transportation from the place of receipt to the place of destination; and
(C) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle.

49 U.S.C. § 13102(8). Kachina must meet all of these requirements in order to be considered a freight forwarder.

**1132**

■ Under Section 11707 of the Interstate Commerce Act (the Carmack Amendment), a common carrier that delivers property and is providing transportation subject to the jurisdiction of the Interstate Commerce Commission is liable to the shipper under the Bill of Lading. 49 U.S.C. § 11707(a). Under 49 U.S.C. Section 10521, the Interstate Commerce Commission has jurisdiction over property which is transported by motor carrier from one state to another state. In this case, Plaintiffs' household goods were transported by motor carrier from Illinois to Arizona. Thus, the Carmack Amendment would apply to Kachina's transportation of Plaintiffs' household goods within the State of Arizona since that was part of Plaintiffs' interstate move and Kachina was the delivering carrier for Plaintiffs' move. *See* 49 U.S.C. § 11707; *Merchants Fast Motor Lines, Inc. v. Interstate Commerce Commission*, 5 F.3d 911 (5th Cir. 1993); *Central Freight Lines v. Interstate Commerce Commission*, 899 F.2d 413 (5th Cir.1990); *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and Teamsters Joint Council v. Interstate Commerce Commission*, 921 F.2d 904 (9th Cir.1990).[11] Accordingly, the court DENIES Defendants' motion to dismiss Kachina as a Defendant in this case.

### III. Plaintiffs' Motion for Partial Summary Judgment

On September 12, 1997, Plaintiffs filed a Motion for Partial Summary Judgment asking the court to find that Defendants breached the contract in the Bill of Lading, that Plaintiffs sustained $249,425.72 in damages for the loss and destruction of their household goods, and that Defendants are liable to Plaintiffs for special and consequential damages, including damage to Plaintiffs' new home and Vicki Tayloe's personal injuries.

### A. Plaintiffs' Carmack Amendment Claim

■ To allege a prima facie claim under the Carmack Amendment, Plaintiffs must establish: (1) the goods were delivered to the carrier in good condition, (2) that the goods arrived at their final destination in a damaged condition or did not arrive at all, and (3) the amount of the loss. 49 U.S.C. § 11707; *Missouri Pacific Railroad Co. v. Elmore and Stahl*, 377 U.S. 134, 138, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964); *Contempo*, 661 F.2d at 765. Based on the evidence contained in the record, the court finds that Plaintiffs cannot establish the first requirement of a prima facie claim as a matter of law. Accordingly, the court denies Plaintiffs' motion for partial summary judgment on their Carmack Amendment claim.

Plaintiffs rely on the affidavit of Plaintiff Vicki Tayloe to establish that their household goods were delivered to Mayflower in good condition. In her affidavit, Mrs. Tayloe simply states that "Defendants received from us the household goods, including all the items listed in our claim, in good order and condition." Affidavit of Vicki Tayloe, ¶ 16. Mrs. Tayloe does not provide any evidence to support her assertion, other than the fact that Defendants' inventory sheets do not contain any reference to mold or mildew on Plaintiffs' goods.

In their opposition to Plaintiffs' motion for partial summary judgment, Defendants provide the deposition testimony of the four Glen Ellyn–Mayflower movers who packed Plaintiffs' boxes at the place of origin. In

---

It is undisputed that Kachina holds itself out to the general public as a provider of transportation services for hire. However, there is no evidence that, in the regular course of its business, Kachina assembles and consolidates shipments. More importantly, however, Kachina did not assume the responsibility of transporting Plaintiffs' goods from their home in Illinois to their home in Arizona. Kachina was only involved in the storage and transportation of Plaintiffs' goods once they arrived in Arizona. Thus, Kachina cannot be considered a freight forwarder under the Carmack Amendment.

**11.** Mayflower argues that Kachina acted as its agent in storing and delivering Plaintiffs' goods within the State of Arizona. However, the fact that Mayflower may have separately contracted with Kachina for the Arizona portion of Plaintiffs' move does not suggest that Kachina, as the delivering carrier, cannot be held liable under the Carmack Amendment for any damage caused during the interstate move.

their depositions, the movers describe Plaintiffs' home as one of the worst smelling homes they have ever been in. Defendants' Statement of Facts, ¶ 4. The movers state that Plaintiffs owned almost a dozen cats and that the home and its furnishings reeked of cat urine. *Id.* at ¶ 5. The movers allege that because of the pervasive smell of cat urine throughout the house, they had to take several unscheduled breaks in order to get fresh air. *Id.* Additionally, the movers allege that there was trash and debris throughout the house and that cat feces was found under and behind the furniture. *Id.* at ¶ 6.

Based on the evidence provided by the Defendants in their memorandum in opposition, the court finds there is a triable issue of material fact as to the condition of Plaintiffs' goods at the time they were delivered to Mayflower. Accordingly, the court DENIES Plaintiffs' motion for partial summary judgment on their Carmack Amendment claim.[12]

### B. Plaintiffs' Claim for Special and Consequential Damages

■ As discussed under Section I(B) of this order, there is a triable issue of material fact as to whether Mrs. Tayloe informed the Defendants of her allergy to mold and whether she told the Defendants that their household goods had to be transported and stored in a dry, temperature-controlled environment. Accordingly, the court DENIES Plaintiffs' motion for partial summary judgment with respect to Defendants' liability for the special and consequential damages alleg-

edly suffered by Plaintiffs as a result of the move.[13]

### C. Plaintiffs' Motion for Attorney's Fees

In their motion for partial summary judgment, Plaintiffs also ask for an award of attorneys' fees and costs. Defendants argue that Plaintiffs cannot recover attorneys' fees under the Carmack Amendment because they failed to utilize Mayflower's dispute settlement program.

A shipper may recover attorney's fees under the Carmack Amendment if:

(1) the shipper submits a claim to the carrier within 120 days after the date the shipment is delivered or the date the delivery is scheduled, whichever is later;

(2) the shipper prevails in such court action; and

(3)(A) no dispute settlement program approved under this section was available for use by the shipper to resolve the dispute; or

(B) a decision resolving the dispute was not rendered under a dispute settlement program approved under this section within the period provided under subsection (b)(8) of this section or an extension of such period under such subsection. . . .

49 U.S.C. § 11711.[14]

As noted above, one of the express requirements for an award of attorney's fees under the Carmack Amendment is that Plaintiffs prevail in the underlying court action. At this time, there has been no judgment in favor of the Plaintiffs.[15] According-

---

**12.** Because Plaintiffs cannot establish as a matter of law that their household goods were delivered to Mayflower in good condition, the court need not address the two remaining requirements of a prima facie case, namely that the goods were lost or delivered to their final designation in a damaged condition, and that the amount of damages is undisputed.

**13.** As explained above, even if the court ultimately finds that Defendants are liable to Plaintiffs for special and consequential damages, Mayflower has properly limited its liability to $100,000.00.

**14.** 49 U.S.C. Section 11711 has been recodified at 49 U.S.C. Section 14708. However, Section 11711 was the section in effect at the time of Plaintiffs' alleged loss.

**15.** In order to recover attorney's fees, Plaintiffs are also required to establish that a dispute settlement program was not available or that a decision resolving the dispute was not issued within the time period provided under subsection (b)(8). Mayflower asserts that a dispute settlement program was available and that Plaintiffs were informed of the program but chose not to participate in it. Plaintiffs argue that the dispute settlement program was not practically available because Defendants failed to give Plaintiffs notice of the fact that they received their claim, let alone an adjustment of their claim, for several months. As noted above, Plaintiffs must first obtain a judgment against the Defendants before the court may even consider awarding Plaintiffs attorney's fees. Therefore, the court will not address the availability of a dispute settlement program until Plaintiffs have obtained a judg-

ly, Plaintiffs' request for attorney's fees is premature. The court will address this issue upon the filing of an appropriate post-judgment motion if, and when, Plaintiffs are ultimately successful in obtaining a judgment against the Defendants.[16]

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART Defendants' Motion for Partial Summary Judgment and DENIES Plaintiffs' Motion for Partial Summary Judgment. Specifically, the court GRANTS Defendants' motion for partial summary judgment with respect to the preemption of Plaintiffs' state law claims and the limitation on Mayflower's liability to $100,000.00. The court DENIES Defendants' motion for partial summary judgment with respect to Defendants' liability for special and consequential damages and Kachina's status as a Defendant in this case. Additionally, the court DENIES Plaintiffs' motion for partial summary judgment with respect to their Carmack Amendment claim, their claim for special and consequential damages, and their request for attorney's fees.

Pursuant to the findings and conclusions contained in this order, Plaintiffs' Second, Third, and Fourth claims for relief are dismissed.

IT IS SO ORDERED.

---

ment against the Defendants and filed an appropriate post-judgment motion for attorney's fees.

**16.** Defendants cite *Accura Systems, Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874 (5th Cir. 1996), in support of their argument that Plaintiffs are not entitled to recover attorney's fees in this action. However, the *Accura* case only dealt with the recovery of attorney's fees under state law and did not address the recovery of fees under 49 U.S.C. Section 11711. Accordingly, the *Accura* case does not suggest that Plaintiffs are not entitled to recover attorney's fees under Section 11711.