**Milo GLASS and Jerolene Glass, Plaintiffs**

v.

**CRIMMINS TRANSFER COMPANY, United Van Lines, and Quad City Moving Co., Defendants.**

No. 01–4096.

United States District Court, C.D. Illinois.

Jan. 13, 2004.

Stephen T. Fieweger, Katz Huntoon & Fieweger PC, Rock Island, IL, for Plaintiffs.

Richard J. Trinrud, Brooks & Trinrud, Stuart R. Lefstein, Pappas & Schnell PC, William R. Stengel, Coyle Gilman & Stengel, Rock Island, IL, Ann C. Barron, Thomas E. Wack, Dennis E. O'Connell, Bryan Cave LLP, St Louis, MO, for Defendants.

## ORDER

GORMAN, United States Magistrate Judge.

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the court are three motions for summary judgment one by each defendant, as well as a "motion to strike the defendants" reply briefs. The motions are fully briefed and the court has carefully considered the matters discussed therein. For the following reasons, two of the motions for summary judgment are allowed and one motion for summary judgment is allowed in part and denied in part. The motion to strike is denied.

## MOTION TO STRIKE

In the motion to strike, plaintiffs argue that the reply briefs were untimely. Plaintiffs fail to take into account the exclusion of weekends and other non-business days in calculating the date on which the reply briefs were due. In addition, the Local Rules of this court do solicit reply briefs as part of the briefing schedule in summary judgment motions. There is a purpose for the reply brief, especially in cases such as this one that present rather novel issues of law, replies assist the court in ruling on motions based on the merits. In a hotly disputed case such as this one, the 10 days would, in all likelihood, have been extended by a day or two had the replies actually been late. I see no prejudice to the plaintiffs and the delay in this situation has caused no difficulty for the court. For both of those reasons, the motion to strike is denied.

## SUMMARY JUDGMENT MOTIONS GENERALLY

Summary judgment is appropriate if all evidence submitted shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56(c); *Cox v. Acme Health Serv.*, 55 F.3d 1304, 1308 (7th Cir.1995). In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, *Erdman v. City of Ft. Atkinson,* 84 F.3d 960, 961 (7th Cir.1996); *Vukadinovich v. Bd. of Sch. Trustees,* 978 F.2d 403, 408 (7th Cir.1992), *cert. denied,* 510 U.S. 844, 114 S.Ct. 133, 126 L.Ed.2d 97 (1993); *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis–Chalmers Corp.,* 799 F.2d 311, 312 (7th Cir. 1986), cert. denied, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987), and construing any doubts against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Trotter v. Anderson,* 417 F.2d 1191 (7th Cir.1969).

If the facts indicate that no reasonable jury could find for the party opposing the motion, then summary judgment must be granted. *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir.1995), (*citing Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party and on which that party will bear the burden of proof at trial, then summary judgment is proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994). In other words, a plaintiff may not simply rest on allegations without significant probative evidence tending to support the complaint. *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). See also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(when the moving party has met its burden, non-moving party must do more than show

some "metaphysical doubt" as to material facts). A scintilla of evidence in support of the non-moving party's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, the moving parties must first identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, that the parties believe demonstrate the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving parties have met the threshold burden of supporting the motion, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to and draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haefling v. United Parcel Serv., Inc.,* 169 F.3d 494, 497 (7th Cir.1999). The existence of "some alleged factual dispute between the parties," or "some metaphysical doubt," however, does not create a genuine issue of fact. *Piscione v. Ernst & Young, L.L.P.,* 171 F.3d 527, 532 (7th Cir.1999). The proper inquiry is whether a rational trier of fact could reasonably find for the party opposing the motion with respect to

the particular issue. See, e.g., *Jordan v. Summers,* 205 F.3d 337, 342 (7th Cir.2000).

## FACTS

The following facts are taken from the parties' statements of undisputed facts, the responses thereto, and the documentary evidence submitted by the parties, unless otherwise noted.

In 1995, the plaintiffs began preparing for a move from Iowa to Florida. As part of the preparation, they arranged for United Van Lines ("United") to facilitate the move. United designated Crimmins Transfer Company ("Crimmins") as its agent for transportation and related moving services. On September 7, 1999, a group of buyers, calling themselves Quad Cities Moving and Storage entered into an asset purchase agreement with Crimmins. Then, on November 5, 1999, Quad Cities Moving and Storage Inc. ("QCMS") incorporated under the laws of Illinois.

In May and June of 1995, Crimmins packed some of plaintiffs' personal property and moved it to a storage facility in Illinois. Additional items were packed and stored in October of 1997. This personal property was to be stored at Crimmins' warehouse until the plaintiffs' new home in Florida was completed; the property was then to be transported to Florida. In May of 1998, a flood occurred at the warehouse. The stored items became wet and then later developed mold, mildew and fungus.

On about September 16, 1999, United retrieved the stored items and moved them to plaintiffs' new Florida residence, where the property was delivered on September 24, 1999. Shortly after the movers began unloading the truck in Florida, plaintiff Jerolene Glass noticed the smell and saw water damage on the furniture. Nearly all the furniture and accessories was either damaged or destroyed by the mold and mildew.

A Crimmins/Quad City employee, Tim Tallman, who assisted in loading the property onto the truck in Illinois and off the truck in Florida noticed (and documented on the inventory) a "musty, mildew odor" and mildew damage on some of the items. Jennifer Hagar, a manager for Crimmins and a vice president of QCMS until June of 2001, knew about the Glasses' claim for damages to their property before closing the purchase of Crimmins by QCMS. In addition to the obvious property damage, plaintiffs allege that numerous health problems have resulted from the molds.

The Glasses filed this suit against Crimmins, United and QCMS, seeking compensation for their property damage, emotional distress, and physical injury. Count I alleges breach of contract against Crimmins, and Count II alleges breach of contract by QCMS as successor in interest to Crimmins. Count III alleges fraudulent concealment by Crimmins and QCMS. In Count IV, plaintiffs allege fraudulent concealment against QCMS and Crimmins, seeking punitive damages. Counts V and VI allege negligence resulting in personal injury to the two plaintiffs. Count VII alleges that United violated the Carmack Amendment, while Count VIII alleges the same violation against QCMS and Crimmins. Counts IX and X allege negligence resulting in personal injury to the plaintiffs.

The suit was filed in Rock Island County, Illinois, and was removed to this court on the basis of federal question jurisdiction. Each of the three defendants has moved for summary judgment as to some of the claims alleged against them. Specifically, United moves for judgment as to counts IX and X; QCMS as to counts II, III, IV, V, VI and VIII; and Crimmins as to counts I, III, IV, V and VI.

## JURISDICTION

Congress has defined federal-question jurisdiction as encompassing:

"any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: Provided, however, that the district courts shall have original jurisdiction of an action brought under section 11706 or 14706 of title 49, only if the matter in controversy for each receipt or bill of lading exceeds $ 10,000, exclusive of interest and costs."

28 U.S.C.A. § 1337. Here, the complaint seeks well in excess of that amount, and Counts VII and VIII are expressly brought under section 14706 of Title 49. This court has original subject matter jurisdiction over those two counts and has supplemental jurisdiction over the remaining counts pursuant to 18 U.S.C. § 1367. See, e.g., *Linc Equipment Services, Inc. v. Signal Medical Services, Inc.*, 319 F.3d 288 (7th Cir.2003); *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629 (7th Cir.2001); *Taisho Marine and Fire Ins. v. Maersk Line, Inc.*, 7 F.3d 238 (Table), text at 1993 WL 406499, Oct 12, 1993 (7th Cir.).

## SUMMARY JUDGMENT MOTIONS

### Preemption by the Carmack Amendment

In their motions for summary judgment, each defendant argues that the plaintiffs' claims under Illinois law, as well certain of their prayers for relief, are preempted by the Carmack Amendment. The Carmack Amendment, enacted in 1906, 49 U.S.C. § 14706(a)(1), formerly 49 U.S.C. § 11707(a)(1), provides in pertinent part:

"A carrier providing transportation or service ... shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service ... are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States. Failure to issue a receipt or bill of lading does not affect the liability of a carrier."

■ The purpose of the Carmack Amendment is "to establish uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment." *Hughes v. United Van Lines*, 829 F.2d 1407, 1415 (7th Cir. 1987). The Carmack Amendment contains a comprehensive remedial scheme whereby a shipper whose cargo is lost or damaged by a carrier may recover damages for that loss. The amount of the recovery is limited to actual losses, unless the shipper and carrier negotiate—for lower rates—a lower cap on potential losses. The agreement must be set out in a bill of lading, and the bill of lading becomes the governing contract between the parties; Carmack's provisions are deemed incorporated into all such contracts.

■ Claims arising out of the interstate shipment of goods raise two distinct but often intertwined issues: preemption of state law claims by Carmack and the use or creation of federal common law to supplement Carmack. In 1913, the Supreme Court held that an interstate carrier's liability is limited to the actual loss or damage to the shipped goods, in an amount stipulated in the bill of lading. *Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913). In addition, the *Adams Express* court held that

the savings clause (which saves common law rights and remedies) means only *federal* common law rights and remedies, not state rights and remedies. *Id.* at 507, 33 S.Ct. 148. The bottom line of *Adams Express* and its progeny is that state statutes and common law are preempted by the Carmack Amendment if they "in any way enlarge the responsibility of the carrier" for losses or if they "at all affect the ground of recovery or the measure of recovery." *Charleston & W.C. Ry. Co. v. Varnville*, 237 U.S. 597, 604, 35 S.Ct. 715, 59 L.Ed. 1137 (1915).

In *Missouri, Kansas & Texas Ry. Co. v. Harris*, 234 U.S. 412, 420, 34 S.Ct. 790, 58 L.Ed. 1377 (1914), the Supreme Court held that Carmack did not bar a $20 attorney fee award to a shipper under Texas law because it did not increase liability for loss of goods and only "incidentally" affected the remedy for enforcing the carrier's responsibility. The Court rejected the proposition that this was a prohibited penalty, finding instead that it was a "compensatory allowance" to the shipper resulting in only a "moderate increment" in suit costs. *Id.* at 421, 34 S.Ct. 790.

The breadth of Carmack's preemption was reiterated in *Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 29, 57 S.Ct. 73, 81 L.Ed. 20 (1936):

> The words of the [Carmack Amendment] are comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination ... The underlying principle is that the carrier is entitled to base rates upon value and that its compensation should bear a reasonable relation to the risk and responsibility assumed. The broad purpose of the federal act is to compel the establishment of reasonable rates and to provide for their uniform application.

Since these cases, the Supreme Court has held consistently that federal law excludes all other rights and remedies with respect to interstate transportation agreements, e.g., *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983), and that a carrier's rights and obligations, as defined by its published tariff, cannot be enlarged by any alleged tort of the carrier. *Maislin Indus. U.S. Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 126, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990).

In *Hughes v. United Van Lines*, 829 F.2d 1407 (7th Cir.1987), cert. denied, 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988), the Seventh Circuit affirmed dismissal of state law claims for negligence, conversion and negligent infliction of emotional distress, arising out of fire damage to household goods. After holding that the "remedy provision of the Carmack Amendment preempts all state and common law remedies inconsistent with the Interstate Commerce Act," *id.* at 1415, the Court of Appeals noted:

> The purpose of this statute is to establish uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment. To permit a shipper to choose among various types of remedies would cause confusion and insurmountable problems and defeat the Act's purpose of eliminating uncertainty as to a carrier's liability by injecting uncertainty back into this area of transportation Congress has sought to regulate.

In *North American Van Lines Inc. v. Pinkerton Sec. Systems, Inc.*, 89 F.3d 452 (7th Cir.1996), the Seventh Circuit discussed the Carmack Amendment in a different context, namely in determining

whether the Illinois Contribution Act applied to a carrier's third party claim against the provider of security services. The District Court had rejected preemption arguments and concluded that the Contribution Act barred the claim because the carrier had settled the shipper's property loss claim without following the procedures mandated by that Act. The Appellate Court reversed, finding that the shipper was not potentially subject to liability "in tort" as the Act requires, so the Act did not apply at all. In reaching that conclusion, the Court commented:

> We recognize that carriers may be liable to shippers in tort for incidental harms associated with the loss or damage of cargo. See, e.g., *Mesta v. Allied Van Lines Int'l, Inc.*, 695 F.Supp. 63, 65 (D.Mass.1988) (finding that a carrier may be liable to a shipper under statute prohibiting deceptive trade practices in addition to liability under Carmack Amendment); *Sokhos v. Mayflower Transit, Inc.*, 691 F.Supp. 1578, 1581 (D.Mass.1988) (same); *Starmakers Publ. Corp. v. Acme Fast Freight, Inc.*, 615 F.Supp. 787, 791 (S.D.N.Y.1985) (stating that a bailor can recover from a bailee in tort if claim for relief does not depend upon existence of a contract). However, these cases involved a *separate and independently actionable harm to the shipper as distinct from the loss of, or damage to, the goods*. In *Mesta* and *Sokhos*, the harm was the carrier's failure to provide the shipper with information required by state law. In *Starmaker's*, the harm was the carrier's breach of an extracontractual duty.

*North American Van Lines, Inc.*, 89 F.3d at 458 [emphasis added].

In *Gordon v. United Van Lines Inc.*, 130 F.3d 282 (7th Cir.1997), the Court of Appeals adopted the Second Circuit's reasoning that federal common law may not be used to create remedies, such as punitive damages, not authorized in Carmack's comprehensive legislative scheme. *Id.* at 286, citing *Cleveland v. Beltman North American Co.*, 30 F.3d 373 (2d Cir.1994). See also, *Morris v. Covan Worldwide Moving Inc.*, 144 F.3d 377 (5th Cir.1998)(federal common law remedies can afford "no greater relief" than what Carmack authorizes).

The *Gordon* court, however, relied on *Rini v. United Van Lines, Inc.*, 104 F.3d 502 (1st Cir.1997), as well as *Hughes* and *Pinkerton*, to formulate an exception to preemption of state law claims that "allege liability on a ground that is separate and distinct from the loss of, or damage to, the goods that were shipped." In *Rini*, the First Circuit had suggested in *dicta* that preemption might not extend so far as to bar torts based on injury "independent from the loss or damage to goods," mentioning as examples assault and intentional infliction of emotional distress.

The *Gordon* Court held that a carrier "must be sheltered from liability except insofar as it may also engage in *conduct that is sufficiently distinct* from the contract of carriage that a separate and independent claim arises." Applying that test, the Court concluded that the plaintiff's claim for intentional infliction of emotional distress was not preempted by Carmack, while the common law fraud claims (fraud in the inducement and in the claims process) were preempted.

Accord, *Smith v. United Parcel Service*, 296 F.3d 1244 (11th Cir.2002)(all state law claims are preempted by Carmack unless they are based on "separate and distinct conduct rather than injury"); *Hull v. United Van Lines*, No. 402CV133 (S.D.Ga. Jan. 6, 2003)(plaintiffs' claim for intentional infliction of emotional distress preempted because it was based on mishandling of goods and attempts to conceal damage,

conduct not "separate and distinct from a failure to properly transport and deliver goods"); See also, *Hubbard v. All States Relocation Serv. Inc.*, 114 F.Supp.2d 1374 (S.D.Fla.2000)(claim for injury personally to shipper, such as emotional distress, not preempted); *Lamm v. Bekins Van Lines Co.*, 139 F.Supp.2d 1300 (D.Ala.2001)(emotional distress and outrage claims not preempted); *Rosenthal v. United Van Lines, LLC*, 174 F.Supp.2d 1331 (N.D.Ga.2001)(emotional distress and loss of consortium claims not preempted).

■ Applying this analysis to the claims of the plaintiffs, I conclude that the state law claims for breach of contract and fraudulent concealment of the fact of water damage and mold contamination are preempted by Carmack. These claims arise directly from and are based solely upon loss of and/or damage to the property that the Glasses consigned to the defendants for shipment. The claim for punitive damages is preempted if brought under Illinois common law, and it is not permitted as a matter of federal common law.

■ The Glasses claims for emotional distress and personal injury, however, are not quite so easily resolved. Although in *Gordon* the Seventh Circuit allowed a claim for intentional infliction of emotion distress to survive, the emotional distress there arose from overt conduct—blatant and multiple misrepresentations made to the plaintiff about the shipment of her property—and not simply from loss of or damage to her property. Here, however, the emotional distress and physical injuries arose directly from the carrier's mishandling of the property and the subsequent claims. Although the plaintiffs have alleged that the defendants' concealment of the property damage was intentional, the duty to disclose was one that arose from the contractual relationship and from

nowhere else. The duty to disclose damage to goods was therefore part and parcel of the shipment, storage and delivery of the furniture, and cannot therefore be considered a "separate" harm. The claims do not fall within the exception carved out by *Gordon* and *Rini*. I find that the state law claims are preempted by Carmack.

■ The Carmack Amendment has not altered the common law rule that special, or consequential, damages are not *usually* recoverable in an action for breach of contract. See *Reed v. Aaacon Auto Transport, Inc.*, 637 F.2d 1302, 1305–06 (10th Cir.1981); *Contempo Metal Furniture Co. of California v. East Texas Motor Freight Lines, Inc.*, 661 F.2d 761, 765 (9th Cir. 1981). The Seventh Circuit has explained that consequential damages are available under Supreme Court rulings:

> In the words of the Supreme Court, the Carmack Amendment is "comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." *Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 29, 57 S.Ct. 73, 81 L.Ed. 20 (1936) Recoverable damages includes damages for delay, see *id.*, lost profits (unless they are speculative), see *Camar Corp. v. Preston Trucking Co.*, 221 F.3d 271, 277 (1st Cir.2000), and all reasonably foreseeable consequential damages, see *Air Prods. & Chems., Inc. v. Illinois Cent. Gulf R.R. Co.*, 721 F.2d 483, 485 (5th Cir.1983).

*American Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Systems, Inc.*, 325 F.3d 924, 931 (7th Cir.2003).

■ Special or consequential damages are those that the carrier did not have reason to foresee as ordinary, natural consequences of a breach when the contract

was made. See *Reed,* 637 F.2d at 1305; *Hector Martinez & Co. v. Southern Pacific Transportation Co.,* 606 F.2d 106, 108–11 (5th Cir.1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980). To recover special damages, the plaintiff must show that the carrier had notice of the special circumstances from which such damages would flow. See *Illinois Central Gulf Railroad v. Southern Rock, Inc.,* 644 F.2d 1138, 1141 (5th Cir.1981); *Reed,* 637 F.2d at 1306.

The cases cited above deal with special damages such as loss of use, lost profits and other business related damages. The issue of whether special damages for personal injury can be recovered under a Carmack claim was considered by the court in *Tayloe v. Kachina Moving & Storage Inc.,* 16 F.Supp.2d 1123 (D.Ariz. 1998), a case remarkably similar on its facts to the case before this court. In *Tayloe,* the carrier temporarily stored plaintiff's household furnishings while their new house was being completed. While the property was stored, some of it became water damaged and moldy. Upon delivery of the property, plaintiff developed a severe allergic reaction to the mold, requiring several hospitalizations. The *Tayloe* court applied the principles articulated above, finding that a question of fact existed regarding whether notice of special conditions, required for proof of special damages, had been given to the defendant of the special circumstances.

See also, *Alessandra v. Mullen Brothers Inc.,* No. 98–5967, 1999 WL 959684 (Mass.Super. Sept. 22, 1999)(plaintiffs' state law claims for physical injuries arising from application of pesticides to stored goods arose out of Carmack claim and therefore were preempted); *Strike v. Atlas Van Lines Inc.,* 102 F.Supp.2d 599, 600 (M.D.Pa.2000)(Carmack preemption extends to claims involving personal injuries

resulting from reaction to gasoline negligently spilled on shipped goods).

However, even if one accepts that special damages are recoverable under Carmack, as the *Tayloe* court did, those special damages would still be governed by the statutory language and clear Supreme Court guidance that damages are limited to and capped by actual loss or damage to the property. In other words, there is no possibility of recovering damages resulting from personal injury in a Carmack claim, absent a tort that is independent from the shipping of goods. Accordingly, I also find that plaintiffs may not seek recovery for their personal injuries in the form of special damages under the Carmack claims.

### Causation

Defendants' causation argument arises from their belief that plaintiff's experts will not be allowed to testify as to causation. As discussed further below, I have held that one of plaintiffs' experts, Richard Lipsey, may not testify as to causation. However, I reject—as I have on several other occasions—the notion that plaintiffs' treating physicians cannot testify about causation unless they were both disclosed as testifying experts and produced a report. Treating physicians are fact witnesses qualified to render opinions, and they may therefore testify about causation. Accordingly, to the extent that the motions are based on causation, they are denied.

### Successor liability

QCMS also moves for summary judgment on the basis that Illinois law does not recognize a theory of corporate successor liability when the buyer of assets does not also assume the liabilities of the selling corporation. The generally accepted rule in Illinois is that a corporation which merges with another corporation

takes on the latter corporation's obligations and liabilities, while a successor corporation which purchases the business assets of another corporation does not become liable for the debts of the seller in the absence of an express agreement to assume the seller's debts. See, e.g., *Myers v. Putzmeister, Inc.*, 232 Ill.App.3d 419, 173 Ill.Dec. 130, 596 N.E.2d 754 (1992); *Green v. Firestone Tire & Rubber Co.*, 122 Ill.App.3d 204, 77 Ill.Dec. 591, 460 N.E.2d 895 (1984); *Gonzalez v. Rock Wool Engineering & Equipment Co.*, 117 Ill. App.3d 435, 72 Ill.Dec. 917, 453 N.E.2d 792 (1983).

Plaintiffs respond, however, that it is federal, not state law that controls this issue. In *Moriarty v. Svec*, 164 F.3d 323, 327–28 (7th Cir.1998), plaintiffs brought an ERISA claim against a funeral home. The sole proprietor of the funeral home had died, and his son had become the new sole proprietor. He argued that there was no successor liability under Illinois law because there was no identity of ownership. The District Court found that there was a clear Congressional intent to avoid conflict with state law under ERISA, and that federal common law therefore governed. In affirming that holding (other aspects of the case were reversed), the Court of Appeals noted:

> The district court did not dispute this interpretation of state law. Instead it held the Illinois successor liability rule had been preempted in the situation by federal common law. *Upholsterers International Union Pension Fund v. Artistic Furniture*, 920 F.2d 1323 (7th Cir.1990). In *Artistic Furniture*, we stated that in order to further Congressional objectives, successor entities can be liable ... if (1) there is sufficient continuity between the two companies and (2) the successor company had notice of the predecessor's liability ... *Atherton [v. FDIC*, 519 U.S. 213, 117 S.Ct. 666, 136

L.Ed.2d 656 (1997)] does not preclude courts from applying appropriate federal rules in areas where Congress manifests a desire to avoid significant conflict.

■ Like ERISA claims, Carmack claims arise under a federal statute clearly demonstrating Congressional intent to avoid conflicts with the varying state laws that might otherwise apply in individual situations. I therefore find that Carmack preempts Illinois law regarding successor liability, in favor of federal common law on the subject. Any other ruling would thwart the clear intent of Congress.

The *Moriarty* Court discussed the federal common law doctrine of successor liability:

> To hold a successor liable we must find that there exists sufficient indicia of continuity between the two companies and that the successor firm had notice of its predecessor's liability. Continuity of operations is easily established here. Artistic employs substantially all of [defendant's] work force and it appears supervisory personnel as well. It used [defendant's] plant, machinery and equipment and manufactured the same products. Work orders not completed by [defendant] prior to its termination were completed by Artistic. Artistic also agreed to honor warranty claims for good sold by [defendant]. Finally, [two Vice Presidents] stayed on in the same positions under Artistic's management. These facts establish adequate continuity of operations for purpose of imposing successor liability.

■ In the case before the court, there was no change in the identity of employees when Crimmins changed to QCMS; Crimmins' employees simply continued to work. QCMS took over the same physical plant and equipment that Crimmins had used. Two Crimmins employees—Jim LaCamera

and Jennifer Hagar—who had been responsible for running Crimmins' day-to-day operations became president and vice president of QCMS. QCMS continued operating, at least for a time, under Crimmins' interstate license and advertised in the yellow pages as Crimmins Transfer, "operating for more than 30 years in the Quad Cities."

■ The second requirement is that the successor firm had notice of predecessor's liability. LaCamera and Hagar have admitted knowledge that the Glasses had outstanding claims before the change in corporate structure took place.

■ The evidence submitted by plaintiff is at least enough to create a question of fact regarding successor liability; in other words, it is enough to defeat the motion for summary judgment filed by QCMS, at least to the extent it is based on a denial of successor liability.

## MOTION TO EXCLUDE TESTIMONY

Defendants Crimmins and United have moved to exclude plaintiff's expert, Richard Lipsey, from testifying at trial, because in their opinion his testimony is unreliable and misleading. I find as follows:

1. Lipsey is sufficiently qualified to testify, except as noted below. The criticisms about his qualifications are criticisms that go to the weight accorded his testimony and to his credibility. The issues raised may be explored on cross examination.

2. Again with the exception noted below, the opinions and report are consistent with Lipsey's stated expertise and could prove helpful to a jury.

3. However, Lipsey may not testify that the mold and bacteria "caused the adverse health effects to the family members" nor may he opine any other formulation of a causal link between the toxins and the plaintiff's injuries. He is not a physician and his qualifications regarding toxic materials do not extend to medical causation in specific cases. The motion is therefore granted in part and denied in part.

## CONCLUSION

For the reasons stated herein, the motion to strike (# 49) is denied. The motion to exclude (# 33) is granted in part and denied in part. The motions for summary judgment (# 29 and # 31) filed by United and Crimmins are allowed, and the motion for summary judgment (# 36) filed by QCMS is allowed in part and denied in part. Judgment is entered in favor of defendants on the following counts: Count I, II, III, IV, V, VI, IX and X, leaving only the Carmack Amendment claims in Counts VII and VIII pending for trial.

This case is set for a telephone status conference on January 27, 2004 at 10:30 a.m. to discuss trial of the Carmack claims. The court will place the call.